# Appeal of the Boards of Missions of the United Presbyterian Church.

1. Where it is uncertain whether a testator disposed of all his estate by will, his intention must be ascertained by a consideration of the whole instrument.

2. Where from all the provisions of a will there was a manifest continuing disposition on the part of the testator to dispose of all his estate and to increase rather than diminish the residuary fund, it would appear that testator did not intend to die intestate as to any portion of his property, real or personal, and this intention must govern unless there is something in the devise itself which compels a different conclusion, for it is well settled that a will must be so construed as to avoid a partial intestacy, unless the contrary is unavoidable.

3. The residuary clause of the testator's will directed the executors to sell all the rest and residue of testator's property, real, personal and mixed, and bequeathed the proceeds of such sale to a certain legatee. *Held,* that this provision included money which had accrued as dividends on bank stocks; that said provision was not a description of the property bequeathed, or a limitation or qualification to property which was the subject of sale.

4. The testator authorized his executors to transfer bank stock " above specially bequeathed to the person, to whom it is bequeathed, and none others." *Held,* that the testator did not intend thereby to abridge the rights of these legatees, but rather to emphasize the absolute character of the gifts, and to indicate that they should vest in them to the exclusion of others, and thus being made to vest in the immediate donees upon their deaths they did not lapse but passed to their heirs.

October 31st 1879.    Before SHARSWOOD, C. J., MERCUR, GORDON, TRUNKEY and STERRETT, JJ.    PAXSON and GREEN, JJ., absent.

Appeal from the Orphans' Court of *Indiana county:* Of October and November Term 1879, No. 353.

Appeal by the Boards of Home and Foreign Missions of the United Presbyterian Church of North America from the decree of the court in the matter of the distribution of the fund in the hands of Robert Pattison, executor of Archibald Stewart, deceased.

Archibald Stewart died on the 5th of April 1877, unmarried, aged about ninety years, and leaving a will dated September 24th 1857, with two codicils, dated respectively December 7th 1861 and August 26th 1864.    The testator bequeathed a number of specific legacies, among which were the following: To his brothers, John and William Stewart, fifty shares each of the stock of the Bank of Pittsburgh; to his niece, Floranna Thompson, twenty shares of said stock, and to another niece, Eliza McQuilken, ten shares. Referring to these and other specific legacies the testator directed that "my said executors are hereby authorized to transfer my stock in the Bank of Pittsburgh, above specifically bequeathed, to the persons to whom the same is bequeathed " and none others."    The will further provided :—

" The rest and residue of my property, real, personal and mixed, I do direct my executors to sell and dispose of, and execute and deliver good and sufficient deeds of conveyance therefor, for such as may be real estate, and the proceeds of such sales I do hereby devise and bequeath to the Home and Foreign Missionary Board of the Associate Reformed Church in the United States of America, by whatsoever name or style the same may be known or incorporated by."

The codicil of December 7th 1861 contained this provision :—

" Whereas since the making of my said foregoing last will and testament, a union has been made between the Associate Reformed Church and the Associate Church in the United States, forming by such union a church under the name and style of the United Presbyterian Church, now I do by this codicil declare and direct that the bequest in my said will given to the Home and Foreign Missionary Board of the Associate Reformed Church in the United States of America, shall be transferred, and I do hereby bequeath and transfer the said bequest and the money thereby bequeathed, to the Home and Foreign Missionary Board of the United Presbyterian Church aforesaid, by whatsoever name or style the said board may be known or incorporated. In witness whereof I have hereto set my hand and seal the day and year last above written. And I do hereby republish my said last will and testament, and do declare and direct that any real estate I may have purchased or become seised of since the making of said will, shall pass under the same as though I had been seised thereof at the making of said will."

And by the codicil of August 26th 1864 the testator declared, " I do hereby ratify and republish the foregoing last will and testament and codicil thereto, made December 7th 1861."

The will was probated in April 1877, and letters testamentary granted to Robert Pattison, the surviving executor, who, on November 1st 1877, filed an account showing a balance in his hands of $119,563.21, which, deducting expenses, left $114,908.05 for distribution. The auditor awarded to the legatees above mentioned the shares of stock bequeathed to them with the accrued dividends, and to the Boards of Home and Foreign Missions of the United Presbyterian Church of North America, the remaining shares of stock in the several banks mentioned in said will, and embraced in executor's account, with the accrued dividends since the death of the said testator ; the accrued dividends on the stock in the First National Bank of Indiana ; the lapsed legacy of Archibald W. Stewart ; the appraised value of the household goods, and the unlifted dividends in the said banks and the balance on general account with the Bank of Pittsburgh at death of testator, after debts, expenses of settling estate, and expenses of audit, amounting to $33,928.94.

The auditor's report having been presented to the court, excep-

tions were filed on behalf of certain of the heirs-at-law, to the allowance by the auditor of the sum of $34,457.72 to the Boards

Home and Foreign Missions of the United Presbyterian Church of North America, and the legacy to Archibald W. Stewart as lapsed, &c.

In ruling upon these exceptions, the court, Blair, P. J., inter alia, said:—

"It is clear that the Home and Foreign Missions are entitled under the residuary clause of this will, to the money arising from the sale of the stocks in the three national banks, and from the sale of the remaining 270 shares of the stock of the Bank of Pittsburgh. It is not denied that they will be entitled also to the dividends declared on these stocks respectively since the testator's death. They will also be entitled to the proceeds of any other property, real or personal, he may have had at the time of his death, which is ordinarily the subject of sale. But we discover no words in it, taken by themselves, or in connection with the whole will, that would warrant us in giving them that description of property which consists of money. Had testator devised and bequeathed to them all the rest and residue of his property, real, personal and mixed, or had he simply given them all the residue of his property, this would have included his money, especially when taken in connection with the introductory words of the will evincive of an intent to dispose of his whole estate. It was quite competent and easy for him to do this, if he so intended. Instead, however, of bestowing the residue of his entire estate, he limits his bounty to a part of it, by directing his executors first to sell the rest and residue, and then bequeathing to the Home and Foreign Missions the proceeds of such sales. To exchange or sell money, or what is regarded and treated as such, would but bring money in return, and we cannot suppose the testator to have directed a proceeding so irrational and useless. The residue he described was not general.

"It does not purport to dispose of everything he might have when he died, undisposed of by previous provisions of the will. It disposes only of a particular residue. The direction to sell is not confined to the real estate. It applies as clearly to the personal as to the real, and it is greatly to the interest of the boards of missions that it does, because, while he may have owned other real estate in addition to what is specifically devised to William Stewart and Mary Pattison, the testimony, now before us, does not disclose the fact. Then, while he distinguishes between the real and personal property, by authorizing his executors to make deeds for such as may be real estate, he immediately returned to the direction to sell both real and personal and devises and bequeaths the proceeds of such sales. This language seems guarded and is free from ambiguity. If we dare suppose, in the face of plain language to the

contrary, that he meant to give the residue of his personal property of every description, but that his meaning with respect to that kind of property was obscured by accidentally incorporating in the same sentence an authority to his executors to sell his real estate, and execute conveyances for the same, we might expect to find some correction of this important clause of the will, when he came to make the first codicil.   But the codicil does not enlarge the residue.   It rather re-affirms the limited character stamped upon it previously.   He therein transfers *the* bequest given in the will, and —not money generally—but *the* money thereby bequeathed.   To say that the legatee shall have money, not within the obvious meaning of the terms used, would be to make a will for the testator, rather than to carry out the one he has made for himself.   We must be careful to avoid this.

" That part of the report of the auditor awarding the sum of $33,928.94, being money or cash owned by testator at his death, to the Boards of Home and Foreign Missions of the United Presbyterian Church, is set aside, and the same is directed to be distributed among the next of kin of the testator, according to law."

From this decree the Boards of Missions took this appeal.

*A. W. Taylor* and *J. N. Banks*, for appellants.—We contend that Mr. Stewart did not die intestate as to any part of his estate, but that the residuary clause in his will is sufficiently broad and comprehensive to cover the entire residue of his estate, including the money in bank on deposit and the unlifted dividends on his bank stock at the time of his death.

If a testator directs all the rest of his property, real, personal and mixed, to be sold and applied as he directs, and a part of that property happens to be money, or credit on the books of a bank, is this alleged inconsistency with the custom of the country to override all the other provisions in his will, the evident general intent and surrounding circumstances, and is intestacy to be declared when the testator himself never contemplated it ?   No doubt he considered money the most suitable and desirable bequest he could make to the Boards of Missions, and hence directed the rest and residue of his property, without intending any restriction or reservation, to be converted into money and go to the said Boards of Missions.

The courts incline against any construction of a will which would result in intestacy, unless it is absolutely forced upon them :   Redf. on Wills, 2d ed., vol. 2, p. 116 ;   Thornton *v.* Burch, 20 Ga. 791 ; Hearne *v.* Wigginton, 6 Madd. Ch. 120, Am. ed., p. 82 ; Woolmer's Estate, 3 Whart. 480 ; Nyce's Estate, 5 W. & S. 260 ; Massey's Appeal, 7 Norris 470.

*James Bain, Harry White* and *Silas M. Clark*, for appellees.—

[Appeal of the Boards of Missions.]

We insist, upon the part of the heirs-at-law, that this clause is not broad enough to carry the $34,457.72, which is the amount of his moneys on deposit and his unlifted dividends at the time of his death, after deducting debts, expenses, &c. It will be observed that testator names his residue as "property;" he does not provide as to the rest and residue of his "estate," or of his "effects," but of his property. A word which was not likely to be used to designate money, or deposits or choses in action. Then he directs that this property shall be "sold and disposed of." If the property referred to was money on deposit or dividends unlifted, these would certainly not be the subject of sale. Further, to show that the sales referred to were to be of the personal property, and had special reference to real estate, he directs his executors to make deeds "for such" of the property sold as may be real estate, which implies of course the sales were to be of personal and real estate both, and his bequest to the Home and Foreign Missions is not of the property, but of the "proceeds of such sales."

We maintain, therefore, that the residue which he describes in the clause in question, was not a general but a particular residue. And as confirming this view of the case we refer to Hunter's Estate, 6 Barr 97; Brendlinger's Appeal, 2 Grant 461; McGlaughlin's Executors v. McGlaughlin's Administrator, 12 Harris 22; German v. German, 3 Casey 116; Ann Myers's Appeal, 12 Wright 26; Fraser v. Alexander, 2 Dev. Eq. 348; Bradley v. Jones, 2 Ired. Eq. 245; Alexander v. Alexander, 6 Id. 229; Archer v. Duncale, 1 Peters 589; Strong v. White et al., 19 Conn. 238; Goulder County v. Littlejohn, 30 Wis. 344.

When a residue is given it is true that every presumption is to be made that the testator did not intend to die intestate; but if he fails to make a disposition of any part of his estate it is an intestacy as to that part. The question is not whether he intended to dispose of the whole residue of his estate; it is, has he done so, and if he has, to whom has he given it: Duffield v. Morris, 8 W. & S. 348.

The use of general words like these, though always to be carried down to the devising clause, in order to illustrate the testamentary intention, do not of themselves create a fee, and will not carry an estate that is clearly omitted: Rupp v. Eberley, 29 P. F. Smith 141.

This cause was argued in the court below prior to the ruling of the Supreme Court in Massey's Appeal, 7 Norris 470, and, therefore, upon the authority of the cases Patterson v. Swallow, 8 Wright 490, Neff's Appeal, 2 P. F. Smith 327, and Yard v. Murray, 5 Norris 113, we argued that the legacy of Archibald W. Stewart, deceased, which lapsed by reason of his death, sank not into the residuary estate, but went to the heirs-at-law as in case of a devise. Under the ruling of Massey's Appeal, however,

this legacy sinks into the particular residue bequeathed to the appellants.

Mr. Justice GORDON delivered the opinion of the court, January 5th 1880.

The material matter in controversy, in this case, is the sum of $34,457.72 which had accumulated, from dividends on bank stocks and otherwise, between the time of the date of the will in dispute, September 24th 1857, and the death of the testator April 5th 1877.

On the one hand it is contended, that by force of the residuary devise this sum belongs to the appellants, the residuary devisees and legatees, and on the other, that of this sum Archibald Stewart, the testator, died intestate.

This contention must be determined from the will itself; if the language of the residuary devise were certain and definite that would settle the question, but, as it is not, we must ascertain the intention of the testator by a consideration of the whole instrument.

Turning then to the will we find, in the outstart, the expressed intent of Archibald Stewart to dispose of " such estate wherewith it hath pleased God to bless me;" and, so far, intestacy, as to any part of his property, is not contemplated. Next, having no lineal heirs, he makes certain specific bequests to his brothers, nephews and nieces, the American Bible Society, the Western Pennsylvania Hospital and to his housekeeper. Then follows the residuary clause in controversy, as follows : " The rest and residue of my property, real, personal and mixed, I do direct my executors to sell and dispose of and execute and deliver good and sufficient conveyances therefor, for such as may be real estate, and the proceeds of such sales, I do hereby devise and bequeath to the Home and Foreign Mission Board of the Associate Reformed Church in the United States of America, by whatsoever name or style the same may be known or incorporated by." Some four years afterwards, December 7th 1861, in view of the union which had been effected between the Associate Reformed and the Associate Churches, he added a codicil to his will in which he says : " And I do hereby bequeath and transfer the said bequest and money hereby bequeathed, to the Home and Foreign Missionary Board of the United Presbyterian Church aforesaid." * * * " And I do hereby republish my last will and testament, and do declare and direct that any real estate I may have purchased or become seised of since the making of said will, shall pass under the same as though I had been seised thereof at the making of said will." Again, some three years after this, August 24th 1864, he added another codicil, by which, after devising a certain farm to his niece, Mary Pattison, he republishes and ratifies his will and the previous codicil.

In all this we may observe a continuing disposition by the testator to dispose finally of all his estate, and to increase rather than decrease the residuary fund bequeathed to the missionary boards. From all this it would appear that the testator did not intend to die intestate as to any portion of his property, real or personal, and this intention must govern unless there is something in the devise itself which forces us to a different conclusion: for it is a rule long and well-settled, that a will must so be construed as to avoid a partial intestacy unless the contrary be unavoidable. From this it results that the residuary legatee often gets that which the testator clearly never intended he should have. This is notably so in the case of lapsed legacies and bequests ill given, for here is the expressed intent that the residuary legatee shall have that only which remains after all other legatees are provided for. The testator may have intended the residue to be very small, and yet, for the causes above stated, it may turn out to be very large, and thus defeat his intention. This happens from the settled disposition of courts to hold that the testator intended anything else rather than partial intestacy. As was said by Mr. Justice KENNEDY in Woolmer's Estate, 3 Whart. 477 : "I have always understood, that with regard to personal estate, everything which is ill given by the will does fall into the residue; and it must be a very peculiar case indeed, in which there can at once be a residuary clause and a partial intestacy. And he goes on to say, "that it is immaterial how it happens that any part of the property is undisposed of, whether by the death of a legatee or by the remoteness and consequent illegality of the bequest; in either way it is residue, that is, something upon which no other disposition of the will operates." We may, therefore, safely repeat, that the money in controversy must go to the residuary legatees, unless there is something in the residuany clause itself which prevents such a result. We may say which *certainly* prevents such a result, for if it be at all doubtful, we must follow the rule and declare against a partial intestacy.

But it is insisted that the residuary clause in the will under consideration, embraces only such property as is the subject of sale, and so excludes the idea of money or other things not ordinarily the subjects of sale. This argument would be conclusive if, as in Hunter's Estate, 6 Barr 97, this were a devise followed by a residuary clause ; for, in such case, it must be presumed that the testator intended to leave something for the residuary legatee. In the case in hand, however, the inquiry at once arises, if the money in controversy goes not to the residuary legatees, to whom does it go? It must pass out of the will ; of it the testator must have died intestate. But, as we have seen, a result of this kind is to be avoided if possible. It is true, indeed, that in Bredlinger's Appeal, 2 Grant 461, a direction in a will to sell the testator's personal as well as real property, and divide the income among his five

children, was held not to mean notes, bonds and mortgages. But this case is badly reported, and, not only so, but the material' point in Hunter's case, which is referred to as authority, is misapprehended. Nothing, therefore, can be predicated of this case. The only thing which renders this residuary clause at all doubtful or obscure is the direction which is found in it to the executors to sell, and the bequest of the proceeds of "such sales" to the missionary boards. But does this direction amount to a limitation or qualification of the words "The rest and residue of my property, real, personal and mixed?" These words are sufficiently general to cover everything, and unless the alleged qualification excludes money, it also must fall into the residue. But as these boards were the favorite and principal objects of his bounty, we cannot but think it improbable that the testator intended to exclude residuary money from passing to these legatees, especially when he directed that money and money alone should be paid over to them. Suppose the testator, in his lifetime, after the making of his will and the codicils thereto, had converted all his real and personal property into cash, and it had been found on deposit at his death, would any one then contend that the residuary legatees could take nothing? Yet, in that event, there would be nothing for the executors to sell. The rest and residue of my estate, of whatsoever kind it may be, I give to my executors to sell, the proceeds to be paid over to the missionary boards of the United Presbyterian Church. What is this after all but a mere direction to sell what is saleable? And if part of that estate comes to the executors in the shape of money, what then? It need not be sold, that is all. The testator, for the benefit of his donees, directed that his entire residuary estate should be converted into money, but if part of it is found in the shape of money, it needs no conversion, and surely not the less does it pass to the legatees. The whole mistake originates in making the direction to sell a description of the property bequeathed, whereas nothing of the kind was intended.

This apparent difficulty may be readily explained by assuming that Mr. Stewart did not anticipate that he would have any money to leave to these boards, except such as would be realized from the sale of his personal and real estate. On this assumption, the language used was intended for the then present condition of his affairs, but it were no more intended to prevent money from falling into the residue than it was to prevent the lapsed legacy of Archibald W. Stewart from taking that direction. He did not anticipate the lapse of that legacy, and so made no special provision for that event; he did not anticipate the accumulation of some $40,000 or $50,000 of money, and so made no special provision therefor. But as the residuary clause takes the one, there is no good reason why it should not take the other.

It was said by Mr. Justice YEATES, in Findlay *v.* Riddle, 3 Binn.

139, that the best rule in the construction of wills is, in the first place, to find out the general intent, and then, as far as the language will admit, to interpret particular expressions accordingly, and that in order to give effect to a general intent, a particular intent, inconsistent therewith, will be overlooked. In the case in hand, we have no expressed particular intent to interfere with a proper construction of the general intent, but only one that arises inferentially from the language used in conferring a power to sell upon the executors, and so this purely inferential intent may be the more readily overlooked.

In concluding this branch of our case, we cannot do better than adopt the language of the vice-chancellor, in the case of Hearne *v.* Wigginton, 6 Madd. Ch. Rep. 119 : " The real question is, whether a general residuary gift is to be limited and qualified to property which is the subject of sale, because the testator has added, that his residuary property is to be sold for the benefit of his residuary legatee. It is uncertain, at the making of the will, what the testator's property may consist of at his death, and the direction to sell implies only a general intention, on part of the testator, that his residuary property shall be converted or collected for the benefit of his residuary legatee."

The remaining question is of easy solution. The legacies to John Stewart, William Stewart, Floranna Thompson and Eliza McQuilken, who died during the lifetime of the testator, leaving issue, are saved from lapse by the Act of May 6th 1844. The addition of the words, " and none others," to the directions to transfer the bequeathed stocks to the legatees, above named, is of no special significance. The testator, certainly, did not intend thereby to abridge the rights of these legatees, but rather, in this manner, to emphasize the absolute character of the gifts, and to indicate that they should vest in them to the exclusion of all others ; and they, thus being made to vest in the immediate donees, passed to the heirs of those donees upon their decease.

> The decree of the Orphans' Court is reversed and set aside, and it is ordered that the report of the auditor be confirmed; that distribution be made as in that report recommended, and that the appellees pay the costs of this appeal.