payment of taxes in the Acts of April 3, 1804, 4 Sm. L. 201, the Act of March 13, 1815, 6 Sm. L. 299, and their supplements. They provide that the county treasurer, every two years, shall make public sale of unseated lands for unpaid taxes in the manner therein directed, and make and execute deeds in fee simple therefor. They also provide for taking a surplus bond, redemption of the land, etc. These several acts provide a complete system for the levy and collection of taxes on unseated land, and the Act of 1844 simply adopts the system for the collection of unpaid taxes on seated land when the owner neglects or refuses to pay, and sufficient personal property cannot be found on the land to pay the taxes.

The passage of the amendatory Act of March 26, 1903, P. L. 63, declaring that the act shall not apply to taxes assessed upon unseated land, does not aid in the judicial construction of the Act of 1901. If it has any significance, however, it is that the legislature immediately succeeding the one that passed the Act of 1901 was convinced that the latter act was inapplicable to the collection of taxes on unseated land.

We are of opinion that the Act of June 4, 1901, P. L. 364, was not intended to and did not repeal former legislation for the collection of taxes on unseated land.

The judgment is reversed and a new venire awarded.

---

## Moore's Estate.

*Wills—Construction—"Property"—"Personal property."*

1. So far as possible a will should be construed so as to avoid inconsistencies, and as a whole, and so as not to disinherit an heir, except by plain words or necessary implication, and so that all its provisions may take effect in the light of the surrounding circumstances. The intent of the testator, which is to be discovered and carried out, means his actual personal intent, not a mere conventional intent inferred from his use of any set phrase or formal words.

2. Testatrix by will provided: "That the income from all my property except $5,000.00 shall be divided equally between my aunt, Mrs. Georgia C. Moore & Mrs. L. E. Foote while they live, and at their deaths the income to be equally divided among their children, respectively: Lillian Carroll, Edna Moore, Clare Foote & Frank Foote & at their deaths. to their children. The above mentioned $5,000.00 I will the use of equally to my two cousins, Harry G. Wilson and Elizabeth H. Wilson, & at their deaths to go to their children. I will all my personal property to my beloved aunt, Georgia C. Moore, and at her death to go to her children, Lillian Carroll & Edna Moore." The estate of testatrix consisted of some real estate and about $23,000.00 of personal estate, most of which was invested in income producing securities. She also had certain personal effects, consisting of jewelry, household goods, horse and buggy, etc. *Held,* the words "personal property" in the last clause of her will had reference to her personal effects, such as wearing apparel, jewelry, household goods, etc., and all her other property passed by the first clause of the will, being comprehended in the expression "all my property."

Argued April 28, 1913. Appeals, Nos. 110 and 111, Jan. T., 1913, by Lillian Carroll and Edna Moore, Executrices, and Lillian Carroll and Edna Moore, Devisees and Legatees, from decree of O. C. Erie Co., February Term, 1911, No. 40, dismissing exceptions to auditor's report in Estate of Lillian Norwood Moore, deceased. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Adjudication of a decedent's estate.

The case was referred to E. L. Whittelsey, Esq., as auditor, to whose report certain exceptions were filed.

WALLING, P. J., filed the following opinion:

This case turns upon the proper construction of the last will of Lillian Norwood Moore, deceased. We believe the auditor reached a correct conclusion. The will is as follows, viz:

"July 4, 1909."

"Erie, Pa."

"I, Lillian N. Moore, will that at my death my cousins

Lillian Carroll & Edna F. Moore, be executors of my estate.

"That the income from all my property except $5,-000.00 shall be divided equally between my aunt, Mrs. Georgia C. Moore & Mrs. L. E. Foote while they live, and at their deaths the income to be equally divided among their children, respectively: Lillian Carroll, Edna Moore, Clare Foote & Frank Foote & at their deaths to their children.

"The above mentioned $5,000.00 I will the use of equally to my two cousins, Harry G. Wilson and Elizabeth H. Wilson, & at their deaths to go to their children.

"I will all my personal property to my beloved aunt, Georgia C. Moore, and at her death to go to her children, Lillian Carroll & Edna Moore.

"LILLIAN NORWOOD MOORE."

The word "property" used in the first disposing clause of the will naturally includes her entire estate except the $5,000 exempted therefrom. "Standing alone, the term includes everything that is the subject of ownership": 23 American and English Encyclopedia of Law (2d Ed.) 260.

Testatrix was about twenty-five years of age, unmarried and without issue and, in that first part of the will, naturally divided her estate among the three collateral branches of her family. However, giving the Wilson branch a fixed sum and the balance equally between her two aunts and their children: Mrs. Georgia C. Moore being an aunt by marriage and Mrs. L. E. Foote an aunt by blood, and their respective children, to whom the property is finally given, being testatrix's cousins. Had she died intestate, Mrs. Foote, the daughters of Mrs. Moore and the Wilson cousins, or their mother if living, would have inherited her estate as heirs.

The estate consisted of some real estate and about $23,000.00 of personal estate, all of which, but about $800.00 being in mortgages and other income producing securities, and a life insurance policy. And the $800.00

being in jewelry, household goods, horse, buggy, etc. She kept her securities in a bank vault. The testatrix, an intelligent, but not a college educated lady, drew her own will on one sheet of paper, and apparently at one time. It is earnestly urged that the last clause of the will, viz: "I will all my personal property to my beloved aunt, Georgie C. Moore, and at her death to go to her children, Lillian Carroll & Edna Moore," revokes the first part of the will as to the entire personal estate. And as to that, so to speak, disinherits Mrs. Foote and her children.

From a consideration of the whole will, we are clear that the testatrix had no such intent. We think by the words "all my personal property" she meant all the property which she had about her person for her own use, to wit: wearing apparel, jewelry, household goods, horse and buggy, etc., and not the income producing property. Such construction harmonizes the entire will. As the said personal effects, jewelry, etc., produces no income, such construction leaves the bequests in the first part of the will intact. As pointed out by the auditor, it is not probable that the testatrix would give one-half of her personal estate, aside from the $5,000, to Mrs. Moore and her daughters in the first clause; and then give the entire personal estate, including that one-half, to them, in the last clause. Nor is it probable that she would give one-half thereof to Mrs. Foote and her children, and then intentionally take it from them almost by the next stroke of the pen. She would apparently not have much time to change her mind, while writing so brief a will. Had she done so before writing the last clause, she would naturally have re-written the will. Had she intended to dispose of her interest-bearing securities in the last clause, so as to give Mrs. Moore the life use thereof, I think would have been apt to use the same language as in the first clause, that is to have given Mrs. Moore the income thereof for life and then to her daughters. And the fact that, in the last clause, she

gives the personal property to Mrs. Moore for life and then to the daughters, tends to strengthen the conclusion that she was not then referring to income producing property.

Of course, the term "personal property" in legal acceptance would usually include everything except real estate; but from the whole will we believe the testatrix intended thereby to include merely such effects as she had for her personal use. And so construed, there is no repugnancy. The rule, that a former clause of a will must give way to a later, is never invoked except as a last resort.

In Mutter's Est., 38 Pa. 314, it is said: "The rule which sacrifices the former of several contradictory clauses in a testament, is never applied, but on the failure of every attempt to give the whole will such a construction as renders every part of it effective; the will is to be construed as a whole, and one part is not to be treated as repugnant to another, if it be possible for both to stand."

Of course, so far as possible, a will should be so construed as to avoid inconsistencies, and as a whole, and so as not to disinherit an heir, except by plain words or necessary implication, and so that all its provisions may take effect, and in the light of the surrounding circumstances.

"The intent of the testator which is to be discovered and carried out means his actual personal intent, not a mere conventional intent inferred from his use of any set phrase or form of words": Tyson's Est., 191 Pa. 218. "A will must be construed so as to give effect to every part of it, and harmony to the whole instrument": McDevitt's App., 113 Pa. 103. "The search is confined to the language of the testator, but the object is still his meaning": Woelpper's App., 126 Pa. 562.

The suggestion that in the first part of the will by the word "property" only real property was intended, is, in our opinion, not tenable. We think to the lay mind

that word naturally means personal as well as real property. And there is nothing on which to base the suggestion that the word "real" may have been omitted by mistake. "Real property" is not a term that would be most likely to be employed by an inexperienced layman, nor can we assume that the word "real" was accidentally omitted. The fact that $5,000.00 is taken out of the property so bequeathed, and set apart for the Wilson cousins, while no provision is made for the sale of any real estate, tends to negative the contention that the property there mentioned was intended to include real estate only. We fully concur in the conclusions stated in the very able and painstaking report of the auditor, and do not deem it necessary to discuss the case further.

The court dismissed the exceptions and this appeal was taken by the legatees and executrices.

*Error assigned,* among others, was the decree of the court dismissing the exceptions.

*Henry A. Clark,* with him *W. S. Carroll,* for appellants.

*Louis Rosenzweig,* for appellee.

PER CURIAM, May 22, 1913

We find no error in the decree of the learned judge of the Orphans' Court, confirming the auditor's report. The appeals are dismissed for the reasons stated by him and the decree is affirmed.