## Donaldson Estate.

Argued May 23, 1949. Before MAXEY, C. J., LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*S. Edward Hannestad,* with him *Kenneth C. Edwards* and *A. Ross Walter,* for appellants.

*James H. Booser,* with him *David M. Wallace* and *McNees, Wallace & Nurick,* for Central Trust Company, Executor, appellee.

*Sterling G. McNees,* with him *McNees, Wallace & Nurick,* for Harrisburg Polyclinic Hospital, appellee.

*Henry S. Drinker,* for Trustees of University of Pennsylvania, appellees.

Opinion by Mr. Justice Linn, June 24, 1949:

Next of kin appeal from an order of distribution [1] made on the adjudication of the account of the executor of J. Allan Donaldson. The appellants are his adoptive first cousins. He died March 31, 1947, about seven months after his wife's death. They left no issue. The plan of his will was simple: to provide an income for his wife for life if she survived him and to give the residue to the University of Pennsylvania and the Harrisburg Polyclinic Hospital whether she survived him or not. He made one other gift; he provided in paragraph 3 that his wife should receive "all of my jewelry, wearing apparel, automobile or automobiles and other personal effects which I may own at the time of my decease. Should my wife predecease me, my executor shall have the power to distribute such personal effects among my next of kin . . . " If she survived (paragraph 4) "all of the rest, residue and remainder of my estate, real, personal, or mixed" would go to the accountant to pay the net income to her for life. Paragraph 5 specified the terms of the trust created in paragraph 4. In paragraph 6, a residuary provision, he directed conversion of "all of the assets of the trust into cash as soon as can be done" after the death of his wife, if she survived him, and the payment of "the net proceeds thereof" to the University and the Hospital. In paragraph 7, an alternative residuary provision, he directed that on his death, his wife having predeceased him, his executer should "convert all of the assets of my estate into cash . . ." and distribute to the two charities. Paragraph 8 provided disposition in the event of their deaths in a common disaster, etc.

1. Appellants contend that the gift in paragraph 3 of "all of my jewelry, wearing apparel, automobile or automobiles and other personal effects . . ." includes

---

[1] The opinion of the court below is reported in 59 Dauphin County Reporter 236 (1948).

household furniture and furnishings, though not mentioned in the gift. That conclusion is reached by contending that the words "and other personal effects" include, by the rule ejusdem generis, household furniture and furnishings. President Judge RICHARDS properly rejected this contention as inconsistent with the apparent intention expressed in the will read as a whole.[2] Personal effects, on the one hand, and household furniture and furnishings on the other, may constitute two classes of objects and have been so considered in our cases. In *Lippincott's Estate*, 173 Pa. 368, 371, 34 A. 58 (1896), it was said: "The phrase 'personal effects' has obtained, by frequent use, as distinctly a defined meaning as the phrase 'household effects.' It designates articles associated with the person, just as the opposite phrase denotes articles belonging to the house." Household furniture may be and generally is personal property but not all personal property is included in the more restricted term "personal effects." The rule ejusdem generis, if applied to the words "all of my jewelry [and] wearing apparel," would certainly not include the furniture and furnishings in testator's residence; nor do the words "automobile or automobiles" suggest it. The phrase "and other personal effects" in the context obviously has a less comprehensive meaning than the broader phraseology considered in *McGlathery's Estate*, 311 Pa. 351, 166 A. 886 (1933) in which the words were not "personal effects" but "all my personal property including jewelry, clothing, etc., and in addition thereto, I bequeath unto [the same beneficiary] the sum of three thousand ($3,000)" subject to paying burial expenses. In that case we adopted the opinion filed in the court below by Judge GEST, the auditing judge. He said,

---

[2] He awarded to the next of kin the jewelry, wearing apparel, automobiles and personal effects but not the household furniture and furnishings.

(page 355) that the "words 'et cetera' following the enumeration of the particular thing, jewelry and clothing, are confined to articles ejusdem generis only and the household furniture would pass under the bequest . . . The meaning of 'including' is somewhat ambiguous . . . The use of the general term 'personal property' would, as above stated, include all her personalty in a strict legal meaning, but the following gift to [the same beneficiary] is, in my opinion, conclusive of the question, for she proceeds 'and in addition thereto I bequeath unto [the same beneficiary] the sum of three thousand dollars . . . Now, the prior gift being of 'all my personal property,' it is in my opinion impossible to hold that the gift of $3,000, 'in addition thereto', did not, in its express language, indicate something else besides the gift of all her personal property including jewelry, clothing, etc., because the words 'in addition thereto', clearly referred to something besides that which had already been given. . . ." In *Reimer's Estate,* 159 Pa. 212, 28 A. 186 (1893) the testator included the words "furniture etc." while in *Moore's Estate,* 241 Pa. 253, 88 A. 432 (1913) the words were "all my personal property." Judge RICHARDS held that the testator's household furniture and furnishings passed under the residuary words "all other assets" contained in paragraph 7.

2. Appellants' second point is that there was partial intestacy under paragraph 7. They contend that the "gift to the University and the Hospital is limited to the proceeds of the conversion of assets other than real estate and business interests." They argue that the only dispositive language, aside from paragraph 3 dealing with personal effects, is in paragraph 7. We shall therefore quote it. "7. If my said wife, Helen Ray Donaldson, shall predecease me, I direct my executor to convert all of the assets of my estate into cash. With respect to real estate, or any interest therein, which I may own at the time of my death, or any business enter-

prise which I may own at such time, I direct my executor to dispose of the same in the same manner and with the same powers and authority as hereinbefore conferred upon my trustees with respect to such items. All other assets shall be converted into cash as soon as this can be accomplished without sacrifice to the estate and the total net proceeds shall be divided equally between the Trustees of the University of Pennsylvania located in Philadelphia, Pennsylvania and the Harrisburg Polyclinic Hospital located in Harrisburg, Pennsylvania, such funds to be used for such capital improvements or endowment purposes as may be determined by the governing boards of said institutions."

Appellants contend (1) "that *there is no gift* of the real estate holdings and business interests, nor of the proceeds of their sale; and that, therefore, an intestacy, as to these assets of the estate results; (2) that, since *only proceeds of sale* are given to the two beneficiaries, *there is no gift* of cash and items equivalent to cash, or of any income, that are not the subjects of sale or conversion, and that an intestacy as to those items results." Those contentions ignore the comparatively simple plan of testamentary disposition. Testator was obviously disposing of all his property not previously given in paragraph 3. Paragraph 6 was a residuary provision disposing of all his property after the death of his wife, in case she survived him; paragraph 7 is the residuary provision applicable if he survived his wife: compare *Noble's Estate,* 344 Pa. 81, 82, 23 A. 2d 410 (1942); *Bricker's Estate,* 335 Pa. 300, 6 A. 2d 905 (1939); *Armstrong Estate,* 347 Pa. 23, 31 A. 2d 528 (1943). In the first sentence testator dealt with "all the assets of my estate" by directing the executor to convert them into cash. In the two other sentences composing paragraph 7, he divided "all the assets of my estate" into two classes for purposes of additional instruction to his executor.

The first class [3] was "real estate, or any interest therein
. . . or any business enterprise which I may own . . ."
at the time of death. The second class included the as-
sets other than "real estate, or any interest therein . . .
or any business enterprise which I may own . . ." The
property in the second class was then described by the
phrase "all other assets" [4] as to the conversion of which
he gave his executor broader discretionary powers than
the law might have implied. The immediately succeed-
ing phraseology "and the total net proceeds" quite obvi-
ously refers to the net proceeds received in the conver-
sion of both classes, that is to say of "all of the assets
of my estate," which was the subject of the residuary
paragraph 7. The mere fact that the scrivener used the
conjunctive "and" in the third sentence providing for
the equal division of "the total net proceeds" instead
of providing for it by a separate sentence beginning
"the total net proceeds shall be divided" is not sufficient
to carry the meaning which the appellants would at-
tribute to it because the argument ignores the relation
of "the total net proceeds" to what preceded in the first
and second sentences of paragraph 7, and to the alterna-
tive provision in the contingency dealt with in para-
graph 6. See *Bricker's Estate*, 335 Pa. 300, 6 A. 2d 905
(1939). The full meaning of the word "total" in the
context cannot be ignored: cf. *Calder's Estate*, 343 Pa.
30, 37-38, 21 A. 2d 907 (1941); *Byrne's Estate*, 320 Pa.
513, 519, 181 A. 500 (1935); *Shipley's Estate No. 2*,
337 Pa. 580, 584, 12 A. 2d 347 (1940). The conjunc-
tion "and" merely takes the place of a full stop and
unites the two parts of paragraph 7—the direction to
convert "all the assets of my estate into cash" and the

---

[3] Of this class alone, one the briefs stated, "The testator's real
estate together with his business aggregated about half a million
dollars."

[4] The account shows that the appraisement of all testator's prop-
erty for Pennsylvania inheritance tax purposes was over $888,000.00.

direction to divide the net proceeds equally between the two charities.

3. In paragraph 6, as stated above, testator gave the charities the net proceeds to be realized, on his wife's death if she survived him, by converting the assets of the trust, that is by reducing them to cash. The words of paragraph 7 must be read with paragraph 6 in mind, because both were parts of the disposition of his entire residue in the contingencies respectively provided for. In reading the whole will to ascertain the intention of the testator, the court may not disregard a provision merely because a contingency rendered it inoperative. To say, as appellants also contend, that by the words used the testator did not dispose of cash on hand and investments in securities because cash and securities were not specified by the use of the words "cash and securities" is to ignore the realities of the testator's conduct in disposing of the residue of his estate remaining after providing for his wife. The cash and the securities passed for what they were in the designations "all of the assets of my trust" (in the contingency expressed in paragraph 6) and "all of the assets of my estate" (in the contingency expressed in paragraph 7). Compare *Appeal of the Boards of Missions of the United Presbyterian Church,*[5] 91 Pa. 507 (1879); *Gibbons's Estate,* 224 Pa. 37, 73 A. 183 (1909).

It is significant that appellants have not contended that paragraph 6, if the wife survived, resulted in partial intestacy; the will is too clearly against such a construction. But they would disregard the effect of paragraph 6 in their claim of partial intestacy under paragraph 7, the contingent counterpart of paragraph 6; that paragraph must be considered if it aids in showing

---

[5] In this case it was said: "The testator, for the benefit of his donees, directed that his entire residuary estate should be converted into money, but if part of it is found in the shape of money, it needs no conversion and surely not the less does it pass to the legatees."

what the words of the will mean. Counsel for the University, in the course of his argument, points to paragraph 8 as supporting testator's intention not to die intestate in any contingency. That paragraph provides, "In the event that my wife and I shall die in a common disaster, or under such circumstances that it cannot be readily determined which of us died first; or if my wife, regardless of the cause of her death shall survive me for less than thirty days, she shall be deemed not to have survived me whether or not I actually predecease her." Counsel suggests that: "The desperate unlikelihood of Appellants' position is further illustrated by its application to a case where Article 8 of the will might have become applicable. They are forced to the conclusion that testator intended a complete disposition of his real estate and business if his wife survived him by 31 days, but that if she survived him by only 29 days testator did not intend such disposition, but to die intestate as to a large part of his estate."

Decree affirmed; costs to be paid by appellant.