THE STATE OF OHIO, APPELLANT, *v.* CHANEY, APPELLEE.

[Cite as State *v.* Chaney (1984), 11 Ohio St. 3d 208.]

(No. 83-1135—Decided June 27, 1984.)

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. Kenneth J. Knabe,* for appellant.

*Mr. Hyman Friedman,* county public defender, *Ms. Marillyn F. Damelio* and *Mr. Steven E. Elder,* for appellee.

J.P. CELEBREZZE, J. The sole issue presented in this case is the propriety of the jury instruction on the value of the items stolen.

The question is important as R.C. 2913.02 distinguishes theft offenses according, *inter alia,* to the value of the property stolen. Prior to its amendment on January 1, 1983,[1] the statute provided that where the value of the

---

[1] R.C. 2913.02 presently provides:

"(A)   No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

"(1)   Without the consent of the owner or person authorized to give consent;

"(2)   Beyond the scope of the express or implied consent of the owner or person authorized to give consent;

"(3)   By deception;

"(4)   By threat.

"(B)   Whoever violates this section is guilty of theft. If the value of the property or services stolen is less than three hundred dollars, a violation of this section is petty theft, a misdemeanor of the first degree. If the value of the property or services stolen is three hundred dollars or more and is less than five thousand dollars, or if the property stolen is any of the property listed in section 2913.71 of the Revised Code, or if the offender has previously been convicted of a theft offense, a violation of this section is theft, a felony of the fourth degree. If the value of the property or services stolen is five thousand dollars or more, or if the offender has previously been convicted of two or more theft offenses, a violation of this section is grand theft, a felony of the third degree. If the property stolen is a motor vehicle, as defined in section 4501.01 of the Revised Code, a violation of this section is grand theft of a motor vehicle, a felony of the third degree."

item was less than one hundred fifty dollars, the offense was petty theft, a first degree misdemeanor.[2] Where the value was one hundred fifty dollars or more, the offense was grand theft, a felony of the fourth degree.[3]

The guidelines for determining value are set forth in R.C. 2913.61(D). That section provided:

"The following criteria shall be used in determining the value of property or services involved in a theft offense:

"(1) The value of an heirloom, memento, collector's item, antique, museum piece, manuscript, document, record, or other thing which has intrinsic worth to its owner and which is either irreplaceable or is replaceable only on the expenditure of substantial time, effort, or money, is the amount which would compensate the owner for its loss.

"(2) The value of personal effects and household goods, and of materials, supplies, equipment, and fixtures used in the profession, business, trade, occupation, or avocation of its owner, which property is not covered under division (C)(1)[(D)(1)] of this section, and which retains substantial utility for its purpose regardless of its age or condition, is the cost of replacing such property with new property of like kind and quality.

"(3) The value of any property, real or personal, not covered under division (C)(1) or (2)[(D)(1) or (2)] of this section, and the value of services, is the fair market value of such property or services. As used in this section, 'fair market value' is the money consideration which a buyer would give and a seller would accept for property or services, assuming that the buyer is willing to buy and the seller is willing to sell, that both are fully informed as to all facts material to the transaction, and that neither is under any compulsion to act."

There are three methods for valuing property under this section which correspond to three different descriptions, or classifications of property. In order to value an item in any given case the logical approach is to compare it in successive order with each of the descriptions. When the description which matches it is reached, the corresponding method of valuation should be used.

Accordingly, it must first be ascertained in this case whether the car battery and radiator fit the description set forth in (D)(1). If they do not, the next step is to see if they may be valued under division (D)(2). If that provision does not apply, the items are covered under division (D)(3), the catch-all provision. Not more than one division may apply to any particular item.

Division (D)(1) pertains to heirlooms and other items of intrinsic or

---

[2] The penalty for a first degree misdemeanor is a term of imprisonment of not more than six months (R.C. 2929.21[B][1]), and/or a fine of no more than one thousand dollars. R.C. 2929.21(C)(1).

[3] The penalty for a fourth degree felony is a minimum term of imprisonment of six months, one year, eighteen months or two years, and a maximum term of five years. R.C. 2929.11(B)(4). In addition, a fine of not more than two thousand five hundred dollars may be imposed. R.C. 2929.11(C)(4).

unusual worth. It is readily apparent that the battery and radiator do not meet these qualifications.

Division (D)(2) covers personal effects, household goods, and material, supplies, equipment and fixtures used in the profession, business, trade, occupation or avocation of the owner. Such property must not have been covered under division (D)(1) and must be of a kind which retains substantial utility for its age and condition. The corresponding method of valuation is the cost of replacing the items with new ones of like kind and quality. This was the method applied by the trial court.

Appellant defends the application of division (D)(2) on the theory that the goods stolen were both personal effects and equipment used in the avocation of their owner. In partial support of this position, appellant cites State v. Wiggins, supra.

In Wiggins, the defendant was convicted of receiving stolen property consisting of two CB radios and a cassette deck removed from different automobiles. On appeal, defendant argued that there was insufficient evidence showing that the items had a fair market value of one hundred fifty dollars or more. The court of appeals concluded, at 148, that the term "personal effects," as used in R.C. 2913.61(D)(2), encompasses "all items of tangible personal property of a person devoted to personal use, including his automobile, and * * * [equipment] installed therein." On this basis, the court concluded further that the proper test of value was the cost of replacement with new property of like kind and quality. Id.

In the case at bar, the court of appeals stated that the Wiggins interpretation of personal effects was overly broad.

This court has not previously considered the meaning of the phrase "personal effects." We must therefore turn to the court decisions of other jurisdictions and our own rules of construction for guidance.

Standing alone, the term "effects" has been held to be broad enough to encompass all of an individual's property, both personal and real. Barney v. May (1917), 135 Minn. 299, 302, 160 N.W. 790, 791; Child v. Orton (1936), 119 N.J. Eq. 438, 440, 183 A. 709, 710; In re Tyler's Estate (1954), 207 Misc. 569, 570, 138 N.Y. Supp. 2d 671, 673. When coupled with the word "personal," however, it is said to have a much more limited meaning, generally referring to tangible property having some intimate association with the owner such as articles which can be carried or worn. Brandon v. Yeakle (1899), 66 Ark. 377, 381-382, 50 S.W. 1004 (does not include insurance business); Barney v. May, supra, at 302 (not money and securities); Gaston v. Gaston (1947), 320 Mass. 627, 628, 70 N.E. 2d 527 (not bank deposits); In re Donaldson's Estate (1949), 362 Pa. 357, 360, 67 A. 2d 88 (not household furniture and furnishings); In re Tyler's Estate, supra (not money); Hatch v. Jones (1956), 81 Ariz. 5, 9, 299 P. 2d 181 (not home furnishings); In re Lathrop's Estate (1956), 100 N.H. 393, 396, 128 A. 2d 199 (examples are wearing apparel, jewelry, hand luggage); In re Peterson's Estate (1963), 104 N.H. 508, 510, 190 A. 2d 418 (not an automobile); Roberts v. United States

(C.A.8, 1964), 332 F. 2d 892, 898 (not a bullet fixed into ceiling of owner's home); *In re Estate of Ensminger* v. *Indiana Natl. Bank* (1969), 144 Ind. App. 338, 349, 246 N.E. 2d 217 (not currency, cash, bank accounts, stocks, bonds, insurance proceeds, or investment assets); *In re Estate of Johnson* (1970), 5 Cal. App. 3d 173, 180, 84 Cal. Rptr. 914; *In re Estate of Reitz* (1973), 213 Kan. 534, 535, 516 P. 2d 909 (not certificate of deposit); *In re Estate of Stengel* (Mo. App. 1977), 557 S.W. 2d 255, 262 (not jewelry not worn by testatrix or kept as keepsake by her); *Weaver* v. *Woods* (Tenn. 1980), 594 S.W. 2d 693, 695 (not airplane); *Teaff* v. *Ritchey* (Tex. App. 1981), 622 S.W. 2d 589, 592 (examples are clothes, toilet articles, eyeglasses and dentures).

These authorities are consistent with our own R.C. 1.42 which requires that all words and phrases (contained in a statute) be read in context and construed according to the rules of grammar and common usage. Also to be considered is R.C. 2901.04(A) which mandates that penal statutes be construed strictly against the state and liberally in favor of the accused.

With these principles in mind we turn to R.C. 2913.61(D)(2). In this section, the phrase "personal effects" is used along with other phrases describing categories of items which may be put to personal use. These phrases include "household goods" and materials used in the "avocation of its owner." Division (D)(3) uses the broader term of "personal" property when speaking of things not covered in the preceding divisions.

When seen in this context, it is evident that the phrase "personal effects," as used in R.C. 2913.61(D)(2), is not intended to include all items of tangible property having some personal use but is limited to articles having an intimate association with the owner. It does not encompass batteries, radiators or other equipment removed from the owner's automobile. The court of appeals was correct in so holding.

As to appellant's remaining argument that the stolen articles were used in the victim's avocation, we note that there was no evidence whatsoever as to Joan Dean's use of these items. Therefore, we cannot engage in speculation on this point. Hence, this argument must also fail.

Based upon the foregoing, we find that the court below was correct in finding that the battery and radiator should have been valued under the fair market value test set forth in R.C. 2913.61(D)(3). The judgment of the court of appeals reversing the trial court is, therefore, affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY and C. BROWN, JJ., concur.

HOLMES, J., concurs in judgment only.

LOCHER, J., dissents.

LOCHER, J., dissenting. Although I agree with the general propositions of statutory analysis utilized by the majority, I have come to a different conclusion and am compelled thereby to respectfully dissent.

R.C. 2913.61(D) offers three views of property valuation which should be read *in pari materia* pursuant to R.C. 1.42. I would agree with the majority that R.C. 2913.61(D)(1) is inapplicable to the case herein. I believe, however, that R.C. 2913.61(D)(2) covers the instant circumstances.

The key to construing R.C. 2913.61(D)(2) is in a review of division (D) as a whole. If the item in question is a personal effect, *and* retains substantial utility for its purpose, the value accorded that property should be replacement value. If the property has not retained any substantial utility, then I feel R.C. 2913.61(D)(3) would allow the appropriate formulation.

The issue of what constitutes personal effects is resolved experientially by the majority. In other words, my colleagues feel that the relationship of an automobile's parts and, in effect, the working automobile to the victim is not so important as to warrant treatment as a "personal" effect. I disagree. An automobile and its parts, whether used for business or pleasure, is an integral part of living in today's society. The auto itself is only the sum of its parts. I believe the language utilized in R.C. 2913.61(D)(2) is sufficiently broad to include any automobile and, by extension, its attached parts. Clearly, if the automobile were shown to have been used solely in a business the R.C. 2913.61(D)(2) definition would have controlled. Although I respect the importance of reading criminal statutes narrowly, and against the state, I see no need to give criminals a windfall based upon a metaphysical inquiry into what role a car plays in activities for business or for pleasure. Why should we interpret this statute to reward criminals who steal automobiles and the parts which enable the car to run with lighter penalties and yet impose harsher penalties on criminals who steal from businesses? Yet, this outcome seems mandated by the majority view.

I would interpret the statute by placing the emphasis on the condition of the property rather than the property type, since the language of the statute is broad, unless that property type is specified with particularity, as in the case of heirlooms or antiques under R.C. 2913.61(D)(1). If a thief steals property that has no intrinsic worth to its owner, then valuation through the use of the property's fair market value, pursuant to R.C. 2913.61(D)(3), is reasonable. On the other hand, if property, like a car battery, works and is an integral part of allowing the automobile to function, I see no reason not to place the owner in the same position as he or she was in prior to theft from the standpoint of the valuation of that stolen property.

I can understand why the court of appeals felt that the decision in *State v. Wiggins* (1980), 68 Ohio App. 2d 146 [22 O.O.3d 382], was overly broad in its statutory interpretation of personal effects. To the extent they were acting by the strict letter of the statute they may be correct. My concern, however, is with regard to the continued viability of the statute as a whole. The decision today poses more questions than it answers and creates un-

necessary complications by placing the ordinary citizens of this state at the mercy of criminals while imposing harsher penalties for those who steal from businesses. For the reasons articulated above, I would reverse the court of appeals. Moreover, I would invite the legislature of this state to provide clear rules for the protection of its citizens.