THE STATE OF OHIO, APPELLEE, *v.* MCGETTRICK, APPELLANT.

(Nos. 49829 and 49830—Decided January 25, 1988.)

*John T. Corrigan,* prosecuting attorney, *Thomas H. Terry III* and *Edward M. Walsh,* for appellee.

*Gold, Rotatori, Schwartz & Gibbons Co., L.P.A., Gerald S. Gold* and *John S. Pyle,* for appellant.

KRUPANSKY, J. On April 17, 1984, in case No. CR 190363, Cuyahoga County Common Pleas Judge James J. McGettrick was indicted on two counts of bribery in violation of R.C. 2921.02. The indictment arose from allegations defendant solicited or accepted $5,000 to influence the outcome of a then pending criminal case, *viz., State* v. *Fencyl,* case No. CR 174472. On May 11, 1984, in case No. 190904, defendant was indicted on an additional bribery count for soliciting or accepting $6,900 to influence the outcome in *State* v. *Amato,* case No. CR 174474. Both indictments were consolidated for trial.

Defendant moved to suppress evidence seized under two search warrants issued and executed April 13, 1984 and April 16, 1984, respectively, contending the warrants were general exploratory search warrants and, therefore, constitutionally infirm. Following the trial court's denial of the motion to suppress evidence, defendant withdrew his pleas of not guilty and entered no contest pleas on all three counts. The trial court found defendant guilty on all three counts and sentenced him to a two-year definite term and fined him $5,000 on each count. The sentences for each of the two counts in the first indictment were to be served concurrently and the sentence of the sole count of the second indictment was to be served consecutively with the sentence of the two concurrent terms of the first indictment. Additionally, the defendant was ordered to forfeit monies received in the commission of the bribery offenses. Timely notice of appeal was filed.

Defendant then filed with the trial court a motion to vacate the no contest pleas because of an alleged breach of a plea bargaining agreement. The trial court denied the motion holding it had no jurisdiction since notice of appeal had been already filed.

Defendant died while appeal was pending and defense counsel filed a motion in this court of appeals to abate all proceedings, vacate the original judgment and dismiss the original indictment. This court of appeals granted the motion and certified the record of the case to the Supreme Court of Ohio finding the decision in conflict with the judgment of the Court of Appeals for Summit County in *State* v. *Sholition* (1954), 70 Ohio Law Abs. 385, 128 N.E. 2d 666. In *State* v. *McGettrick* (1987), 31 Ohio St. 3d 138, 31 OBR 296, 509 N.E. 2d 378, the Supreme Court reversed and remanded, holding upon the death of a criminal defendant with a pending appeal, the state must be given an opportunity to substitute parties pursuant to App. R. 29. The state timely substituted the executor of defendant's estate. In compliance therewith, the within action will be determined on its merits.

Evidence presented at the suppression hearing follows.

Detective Sergeant Robert J. Cermack, the affiant for both affidavits, testified the affidavit for the search warrant obtained April 13, 1984 states he had good cause to believe the defendant's residence, court chambers and automobile unlawfully concealed $5,000 in marked currency which defendant had obtained from a federal law enforcement official on the night of April 12, 1984. Earlier that year this same federal agent[1] had been approached by defendant in a bar in a casual manner while the agent was off

___

[1] Apparently defendant was unaware he was talking to a federal agent.

duty. The agent stated "We really appreciated what you did for us in the Amato/Cicirella[2] * * * murder case." (Footnote added.) Defendant apparently interpreted the agent's remark to mean he was associated with the Hell's Angels. Defendant began to talk about the Hell's Angels and told the agent he had received only partial payment for his ruling in the *Amato* case. The affidavit states defendant requested a $5,000 bribe from the agent in a subsequent conversation in the same bar for a favorable ruling in the *Fencyl*[3] case which also involved the Hell's Angels association. On April 12, 1984, the agent was wired and given $5,000 in marked currency. After a short conversation with defendant in the same bar, the agent gave defendant the $5,000 in marked currency.

The affidavit sought permission to search for and seize the $5,000, the serial numbers of which had been previously recorded, and to obtain all records, books and documents pertaining to Cuyahoga County Common Pleas Court cases which had been disposed of or ruled on by defendant.

On April 13, 1984, the warrant was executed. The search at defendant's home revealed the defendant's papers were in a highly disorganized state. The police seized scraps of paper with attorney's names and case names written on them. They seized newspaper articles from a bureau in defendant's bedroom referring to the *Amato* case and also to another murder case, the *Barger Metal* case, where McGettrick had directed a verdict for the defendant. Additionally, the search yielded a metal box. Inside the metal box the police found the marked $5,000, three common pleas court envelopes containing a total of $2,100 in large denomination bills, a letter, a bank passbook and defendant's last will and testament. The metal box with all its contents was seized along with the newspaper articles with references to the *Amato* case and various disorganized scraps of paper.

During the April 13 searches defendant was arrested in accordance with a lawful arrest warrant. When he was searched, a bank safety deposit box key was found on defendant's person.

On April 16, 1984, Detective Cermack again prepared and swore to another affidavit for a search warrant before another common pleas court judge. The second affidavit incorporated all the averments of the first affidavit with references to the $5,000, the common pleas court envelopes containing the $2,100 and records and papers with references to the *Amato* case and *Barger Metal* case[4] found during the execution of the first search warrant. It also refers to the safety deposit box key. Additionally, the affiant averred, based upon the results of the first search, he believed there was probable cause to search the safety deposit box for books, records and financial data pertaining to the cases upon which defendant had ruled.

Detective Cermack testified that based upon the results of the first search there was probable cause to believe evidence of other briberies including records or cash receipts would

---

[2] The search warrant designates the case as the "Amato-Chakeralis murder case." Copies of the first warrant and the affidavit are attached as the appendices to this opinion.

[3] The *Fencyl* case was pending before McGettrick.

[4] The search warrant states: "Also found at the aforementioned residence were references to other criminal cases previously disposed of by Judge McGettrick."

be found in the safety deposit box. As the *Amato* case had been decided six months earlier, it was reasonable to infer the receipts would most likely be in the form of records other than cash although it was possible there would still be cash in the safety deposit box. In McGettrick's home, a newspaper article relating to the Crim. R. 29 dismissal of the *Barger Metal* case was found next to a receipt for $5,000. Cermack also testified that prior to the time the first warrant had been drawn, defendant had made a statement to Agent Wells that "he [McGettrick] had performed in the past." Additionally, during the search of defendant's home, the police found a handwritten copy of the journal entry concerning the *Amato* case dismissing it pursuant to Crim. R. 29. Cermack further testified that since *Amato* had been decided six months earlier, it was reasonable to infer the money from the other cases, and more specifically the *Amato* case, had been placed in a safe location such as a safety deposit box.

While the police were searching the safety deposit box, defendant along with his bailiff appeared at the bank and attempted to remove some of the contents of the box. The search of the box revealed several common pleas court envelopes containing large sums of money.

The trial court denied the motion to suppress evidence seized in both search warrants and defendant changed his pleas to no contest. The court allowed the state to proffer evidence; thereafter, the trial court found defendant guilty as charged.

Prior to sentencing, defense counsel stated on the record defendant's intention to appeal the court's denial of the motion to suppress evidence. Subsequent to sentencing, defendant requested an appeal bond upon which the court conducted a hearing. After defense counsel presented his argu-

ment, the court then asked the state for its argument and the state opposed the bond. Defense counsel objected to the state's argument, alleging in plea negotiations the state agreed not to oppose an appeal bond in exchange for the change of pleas. The state alleged there was no breach of the agreement. The state indicated the agreement had been to not oppose the appeal bond unless requested by the court to give an argument. The trial court denied the motion for appeal bond.

Notice of appeal was filed February 11, 1985.

Subsequent to filing the notice of appeal, defendant filed a motion to vacate the no contest pleas because of the alleged breach of the plea bargain agreement. The trial court ruled it had no jurisdiction to hear the motion to vacate due to the filing of the notice of appeal.

Defendant assigns three errors on appeal. Assignments of error numbers one and two involve substantially identical issues of law and fact and will be discussed concurrently.

Assignments of error numbers one and two follow:

"I. The trial court committed prejudicial error by denying the appellant's motion to suppress the evidence seized from the appellant's safe deposit box on April 16, 1984.

"II. The trial court committed prejudicial error by failing to suppress all evidence seized from the appellant's home, car and court chambers on April 13, 1984."

Assignments of error numbers one and two lack merit and are overruled.

Defendant contends the search warrants were invalid for a number of reasons. In particular he argues there was a lack of probable cause and the warrants were constitutionally defective because they failed to state the items to be seized with particularity.

We disagree.

"In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. * * *" *Brinegar* v. *United States* (1949), 338 U.S. 160, 175.

A probable cause determination is made upon the basis of the totality of the circumstances and requires the issuing magistrate to make a practical common-sense decision based upon the affidavit that evidence of a crime will be found in a particular location. *Illinois* v. *Gates* (1983), 462 U.S. 213. Probable cause is a flexible common-sense standard which permits the police and magistrate to draw conclusions about human behavior. *Texas* v. *Brown* (1983), 460 U.S. 730.

It is clear there was probable cause to issue the first warrant. Defendant had accepted $5,000 in marked currency as a bribe to dismiss the *Fencyl* case the day before the issuance of the first warrant. The affidavit states he had also made statements to an undercover Alcohol Tobacco and Firearms agent indicating this was not the first bribe defendant had accepted. It was a reasonable common-sense conclusion to believe the $5,000 in marked currency would be found in defendant's home, office or car as well as evidence of other briberies including the bribe defendant had admitted receiving in the *Amato* case. Additionally, there was probable cause to issue the second warrant based upon, *inter alia,* the following: (1) the inventory of the first search; (2) defendant's highly disorganized files; (3) records and cash in common pleas court envelopes; and (4) references to both the *Barger Metal* and *Amato* cases along with the handwritten journal entry on a common pleas court envelope pertaining to the *Amato* case. The affidavit for the second warrant incorporates all the averments of the first warrant and lists the inventory of the first seizure. Based upon the common-sense assumption that criminal activity was ongoing, the location of the $5,000 in marked currency in a place of relative security, *viz.,* the metal box, and since the *Amato* case had been decided six months prior to the first search, it was reasonable to infer further cash receipts, records and documents could be found in a place of even greater security, *viz.,* the safety deposit box. Therefore, there was also probable cause to search the safety deposit box for additional records, books and financial data.

Furthermore, the warrants stated the items to be seized with sufficient particularity. General and exploratory searches are prohibited. *Marron* v. *United States* (1927), 275 U.S. 192; *State* v. *Halczyszak* (1986), 25 Ohio St. 3d 301, 302, 25 OBR 360, 361, 496 N.E. 2d 925, 929. However, evidence not specifically described in a warrant may be validly seized under two theories: (1) based upon evidence known to the officers the articles seized were closely related to the crime being investigated; (2) the officers had reasonable cause to believe the items seized were instrumentalities of the crime. *State* v. *Fields* (1971), 29 Ohio App. 2d 154, 160-161, 58 O.O. 2d 212, 215-216, 279 N.E. 2d 616, 620-621.

In the case *sub judice,* the first warrant sought the $5,000 in marked currency defendant had accepted the previous day in exchange for a favorable ruling on the *Fencyl* case. It also sought all records, books and documents pertaining to cases disposed of or ruled upon by defendant. As noted *supra,* the police officers had evidence of an ongoing and continuing course of criminal activity, as defendant had previously stated he had "performed in the past." This is especially so, since

defendant told the undercover Alcohol Tobacco and Firearms agent he, defendant, had to determine the amount still owed for the *Amato* case; therefore, when the record of the amount paid and/or still owed was not found during the first search, it was reasonable to infer such records were located in the safety deposit box. As such, and under the circumstances, greater particularity was impossible. Cf. *United States* v. *Fuccillo* (C.A. 1, 1987), 808 F. 2d 173, 176.

Furthermore, the items sought to be suppressed were closely related to the bribery crimes being investigated. The items included the $5,000 in marked currency and references to the *Amato* and *Barger Metal* cases, both of which had been dismissed under Crim. R. 29 by defendant. In close proximity to the newspaper article concerning the *Barger Metal* murder case, the police found a receipt for $5,000. The police also found a handwritten copy of the *Amato* case journal entry of dismissal. In addition, in the grey metal box which contained the $5,000 in marked currency the police also found several official common pleas court envelopes containing large sums of cash. Since the cash was in common pleas court envelopes the police had reasonable cause to believe, based upon a common-sense interpretation of human behavior, defendant received these large sums of cash at the Justice Center and placed the cash in court envelopes. Additionally, based upon defendant's statements indicating he had "performed in the past," the police had reasonable cause to believe the cash contained in these envelopes was received in furtherance of the ongoing acts of bribery. Thus the items seized were either closely related to crimes being investigated and/or the officers had reasonable cause to believe the items seized were instrumentalities of the crime.

This same analysis applies to the second search; however, it applies with even greater vigor. Upon obtaining a search warrant to search the safety deposit box for records, books or financial data pertaining to the criminal cases previously disposed of by the defendant, the officers opened the safety deposit box and found several common pleas court envelopes containing large sums of cash. These items were identical in nature and character to items in the grey metal box seized at defendant's residence. Thus, although we hold additional particularity for both warrants was impossible under the circumstances, we also hold if the items seized were not particularly described in the warrants, they were validly seized (1) because the officers had reasonable cause to believe the items seized were instrumentalities of a continuing course of illegal activity and (2) because, based upon the evidence known to the officers, the documents, records and cash seized were closely related to crimes being investigated.

Furthermore, regarding the impossibility to further particularize the items to be seized, one federal circuit court has stated:

"* * * In *United States* v. *Klein,* 565 F. 2d 183 (1st Cir. 1977), we set forth two tests which in particular circumstances may help to illuminate whether this principle is satisfied: first, the degree to which the evidence presented to the magistrate establishes reason to believe that a large collection of similar contraband is present on the premises to be searched, and, second, the extent to which, in view of the possibilities, the warrant distinguishes, or provides the executing agents with criteria for distinguishing, the contraband from the rest of an individual's possessions. * * *" *Fuccillo, supra* at 176.

Both warrants clearly pertained to

criminal cases decided by defendant and considering the evidence of ongoing and continuing criminal activity there was reason to believe a large collection of evidence of criminal activity was present. Additionally, since the warrants only sought items and records pertaining to common pleas court cases currently under defendant's consideration or cases defendant had decided in the past, they sufficiently established the distinguishing characteristics of the items to be seized.

Defendant's reliance on *Fuccillo* to support his contention the warrants were invalid is unpersuasive. The facts of *Fuccillo* are inapposite to the case *sub judice.* In *Fuccillo,* a witness had given a very detailed description of the contraband to the FBI agent who failed to inform the magistrate who was therefore unable to specify the items with particularity in the warrant. In addition, the law enforcement officials, when executing the warrant issued in *Fuccillo,* went beyond the warrant and seized the entire contents of the premises searched, establishing the warrants failed to sufficiently appraise the law enforcement officials of the items to be lawfully seized. In the case *sub judice* the officers seized only very specific items, *viz.,* the grey metal box which contained three common pleas court envelopes and the $5,000 in marked currency; items which made reference to the *Amato* and *Barger Metal* cases found in defendant's home; calendar and appointment books, docket books and references to the *Fencyl* and *Amato* cases found in defendant's chambers and his bailiff's office; cash found in the safety deposit box and a man's ring which defendant attempted to remove from the box during the search.

In addition, the police officers acted with objective good faith in executing the warrants and seizing the property.

"1. The exclusionary rule should not be applied to suppress evidence obtained by police officers acting in objectively reasonable, good faith reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid. (*United States* v. *Leon* [1984], 468 U.S. [897], 82 L. Ed. 2d 677, followed.)

"2. Where the officer's conduct in the course of a search and seizure is objectively reasonable and executed in good faith, excluding the evidence because the search warrant is found to be constitutionally invalid will not further the ends of the exclusionary rule in any appreciable way." *State* v. *Wilmoth* (1986), 22 Ohio St. 3d 251, 22 OBR 427, 490 N.E. 2d 1236, paragraphs one and two of the syllabus.

In *Leon,* the court recognized that the exclusionary rule is a judicially created rule designed to safeguard Fourth Amendment rights. However, the court recognized the substantial social costs which result from its application at 688-689:

" ' "* * * [The] unbending application of the exclusionary sanction to enforce ideals of governmental rectitude would impede unacceptably the truth-finding functions of judge and jury." *United States* v. *Payner,* 447 U.S. 727, 734, 65 L. Ed. 2d 468, 100 S. Ct. 2539 (1980). An objectionable collateral consequence of this interference with the criminal justice system's truth-finding function is that some guilty defendants may go free or receive reduced sentences as a result of favorable plea bargains. Particularly when law enforcement officers have acted in objective good faith or their transgressions have been minor, the magnitude of the benefit conferred on such guilty defendants offends basic concepts of the criminal justice system. *Stone* v. *Powell, supra,* at 490, 49 L. Ed. 2d 1067, 96 S. Ct. 3037. Indiscriminate application of the exclusionary rule,

therefore, may well "generat[e] disrespect for the law and the administration of justice." *Id.*, at 491, 49 L. Ed. 2d 1067, 96 S. Ct. 3037. * * *'

"The court recognized that the objective of the exclusionary rule was to deter willful, or at the very least negligent, police conduct which deprived a defendant of some right. The refusal to admit evidence gained as a result of such conduct is to instill in the officers a greater degree of care toward the rights of the accused. See *id.* at 694-695. But the court recognized that the rule was useless when the police act in good faith, quoting to *Michigan* v. *Tucker, supra,* at 447.

"Therefore, the Supreme Court recognized that the remedial objectives behind the exclusionary rule are not realized in situations where a violation of the Fourth Amendment was not due to police misconduct. * * *'" *Id.* at 264-265, 22 OBR at 438-439, 490 N.E. 2d at 1246-1247.

Based upon defendant's prior conversations with a federal agent and also upon the April 12, 1984 transaction between defendant and that agent, the police had probable cause to believe crimes of a continuing nature had been committed, *viz.,* defendant was accepting bribes in violation of R.C. 2921.02 in order to influence his trial court decisions. The police went to a common pleas judge on April 13, 1984 and presented an affidavit which was duly sworn to under oath. The trial judge held a forty-five-minute hearing concerning the first search warrant. If the warrant was technically deficient, which it was not, due to a failure to particularize the items to be seized, the responsibility rested with the judge and not the officers. Therefore, the officers, if they acted with objective good faith, should not be penalized for the judge's error if any.

In the case *sub judice,* the police conduct was largely error free. The police, armed with the warrant, found and seized the contents of a metal box containing the marked $5,000 and additional sums which had been placed in common pleas court envelopes. Further, pursuant to the warrant the police seized other documents including references to other cases, attorney names and phone numbers, and financial data. Defendant's records were not in organized files but in a highly disorganized state. The police acted in objective good faith and were as selective as possible based upon the disorganized state of defendant's records. If a few other items which may have been irrelevant were seized, it was a minor transgression and did not invalidate the warrants.

Based upon these records, the bank safety deposit box key found on defendant during a lawful search incident to a valid arrest and defendant's prior conversations with the federal agent, the police also had probable cause to believe evidence of past or continuing crimes would be found in defendant's safety deposit box. Even if the second warrant were invalid because of a failure to sufficiently particularize the items to be seized, the police acted in objective good faith. Based upon the first warrant, the police knew defendant, although he kept extremely disorganized records, had a tendency to place the bribe money and important records in a place of security, *viz.,* the metal box in the dresser. The police had reasonable suspicion to believe additional data contained in the safety deposit box would be associated with criminal activity since that box was also a place of security. The police, therefore, had probable cause to associate the contents of the safety deposit box with criminal activity. They found additional cash, which according to the state's evidence proffer was traceable and traced to associates of the Hell's Angels.

In addition, another equally valid

ground for the seizure of the contents of the safety deposit box existed. When the search of the safety deposit box was in progress, defendant attempted to remove certain items from this box. As a result, the police had probable cause to believe defendant would attempt to remove culpable material from the box. Therefore, the destruction of evidence of criminal activity was an immediate threat and concern. Thus, due to the exigency of the situation the police had probable cause in seizing the property.

"* * * An otherwise unlawful arrest may be valid if exigent circumstances necessitated the warrantless seizure or if the arresting officers were acting in good faith and in compliance with then permissible standards of conduct. *United States* v. *Peltier* (1975), 442 U.S. 531; *Warden* v. *Hayden* (1967), 387 U.S. 294; *Schmerber* v. *California* (1966), 384 U.S. 757." *State* v. *Williams* (1983), 6 Ohio St. 3d 281, 283, 6 OBR 345, 347, 452 N.E. 2d 1323, 1328.

As in an arrest situation, exigent circumstances may arise during the objective good faith execution of a search warrant. In the case *sub judice* defendant appeared during the police search of his safety deposit box and reached in with his hand in an attempt to grab some of the contents of the box. The police reasonably believed defendant would attempt to remove objects from the box which were associated with criminal activity resulting in a destruction of material evidence. Under the circumstances, the officers acted reasonably in seizing the contents of the safety deposit box, which included cash eventually traced back to the Hell's Angels association.

For the foregoing reasons, assignments of error numbers one and two are not well-taken and are overruled.

Assignment of error number three follows:

"The trial court committed prejudicial error by failing to enter a ruling on the appellant's motion to vacate his no contest pleas."

Assignment of error number three lacks merit and is overruled.

On February 8, 1985, the trial court's sentence was journalized; defendant filed his notice of appeal on February 11, 1985. On February 25, 1985, defendant filed a motion to vacate the no contest pleas. This motion was based upon an alleged breach of a plea bargain agreement. The trial court heard oral arguments concerning defendant's motion to vacate his pleas on March 1, 1985. The trial court found it had no jurisdiction to hear the motion to vacate the pleas since the notice of appeal had been previously filed.

We agree.

The filing of a notice of appeal divests the trial court of jurisdiction to act inconsistently with the appellate court's jurisdiction to review, affirm, modify or reverse the appealed judgment. *State, ex rel. Special Prosecutors,* v. *Judges, Court of Common Pleas* (1978), 55 Ohio St. 2d 94, 97, 9 O.O. 3d 88, 90, 378 N.E. 2d 162, 165. In the case *sub judice,* if the trial court had vacated the no contest pleas, it would have resulted in a usurpation of this court's jurisdiction since its action would have interfered with the power and jurisdiction of this court of appeals to review and to affirm, modify, reverse or remand the case. App. R. 12. Therefore, the trial court lacked jurisdiction to hear the motion to vacate the pleas once notice of appeal had been filed.

Assignment of error number three is not well-taken and is overruled.

*Judgment affirmed.*

NAHRA, C.J., and MATIA, J., concur.

APPENDIX 1

"STATE OF OHIO        )
                     )  SS.
"COUNTY OF CUYAHOGA  )

"IN THE COURT OF COMMON PLEAS CRIMINAL DIVISION

SEARCH WARRANT

"TO: CHIEF OF POLICE OF THE CLEVELAND POLICE DEPARTMENT and/or SGT. ROBERT J. CERMAK, a member of said Department CHIEF OF POLICE OF THE ROCKY RIVER POLICE DEPARTMENT and/or MEMBERS OF SAID DEPARTMENT

"WHEREAS there has been filed with me an affidavit consisting of five pages, a copy of which is attached hereto, designated as Exhibits A, A-1, A-2, A-3 and B, C and incorporated herein as though fully rewritten, wherein the affiant avers that he believes and has good cause to believe that

"(1) on the premises known as 20525 Stratford Avenue, Rocky River, Ohio, further described as a white two story single family dwelling with attached garage, being the residence of Judge James J. McGettrick

"and/or

"(2) on the premises known as the Chambers of Judge James J. McGettrick, located adjacent to Courtroom 21-B located on the 21st floor of the Justice Center, Cuyahoga County Common Pleas Court, Cleveland, Ohio

"and/or

"(3) in the 1984 Cadillac four door sedan, Ohio license No. J M 23, serial number 1G6AM698XE9008200, listed to Judge James J. McGettrick,

"there is now being unlawfully kept, concealed and possessed the following:

"$5,000 in currency in $100 denominations, the serial numbers of which have been previously recorded and are in the custody of the Cleveland Police Department;

"All records, books and documents pertaining to Cuyahoga County Common Pleas Court cases, the Court's journal and any books, records or documents concerning Common Pleas Court cases that have been disposed of or ruled on by Judge James J. McGettrick.

"I am satisfied that there is probable cause to believe that the property described is being concealed on the premises and/or in the automobile above described and that grounds for issuance of this search warrant exist.

"You are hereby commanded in the name of the State of Ohio, with the necessary and proper assistance, to serve this warrant and search forthwith within three days of the date hereof, for the property specified, making search in the day season, and if the property or any part thereof be found there you are commanded to seize it, leaving a copy of this warrant and a receipt for the property taken, prepare a written inventory of the property seized, and return of this warrant shall be made to the undersigned or any Judge of the Court of Common Pleas, and bring the property found on such search forthwith before said Judge, or some other judge or magistrate of the county having cognizance thereof.

"Given under my hand this 13 day of April, 1984.

"/s/ Robert E. Feighan
JUDGE, COURT OF COMMON PLEAS CUYAHOGA COUNTY, OHIO"

[The Affidavit for Search Warrant, exhibits A through A-3, follows as Appendix 2. Exhibits B and C are omitted. Exhibit B is a photograph of defendant's home at 20525 Stratford

Avenue. Exhibit C is a photocopy of the $5,000.00 depicting the serial numbers of the bills received by defendant from the Federal Agent for the *Fencyl* case.]

APPENDIX 2

"STATE OF OHIO )
) SS.
"COUNTY OF CUYAHOGA )

"IN THE COURT OF COMMON PLEAS CRIMINAL DIVISION

"AFFIDAVIT
FOR SEARCH WARRANT

"Before me a Judge of the Court of Common Pleas, Cuyahoga County, Ohio, personally appeared the undersigned Sgt. Robert J. Cermak of the Organized Crime Intelligence Unit of the Cleveland Police Department, who being first duly sworn deposes and says that he is a member of the Cleveland Police Department and has been a member for the past eighteen years, and that he has good cause to believe that

"(1) on the premises known as 20525 Stratford Avenue, Rocky River, Ohio, further described as a white two story single family dwelling, with attached garage (a photo of same attached hereto and marked Exhibit B) being the residence of Judge James J. McGettrick

"and/or

"(2) on the premises known as the chambers of Judge James J. McGettrick, located adjacent to Courtroom 21-B located on the 21st floor of the Justice Center, Cuyahoga County Common Pleas Court, Cleveland, Ohio

"and/or

"(3) in the 1984 Cadillac four door sedan, Ohio licence No. J M 23, serial number 1G6AM698XE9008200, listed to Judge James J. McGettrick

"there is now being unlawfully kept, concealed and possessed:

"$5,000 in currency in $100 denominations, the serial numbers of which have been previously recorded and are in the custody of the Cleveland Police Department; All records, books and documents pertaining to Cuyahoga County Common Pleas Court cases, the court's journal and any books, records or documents concerning Common Pleas Court cases that have been disposed of or ruled on by Judge James J. McGettrick.

"The facts upon which affiant bases such belief are as follows: Occasionally, in an off-duty capacity, a federal law enforcement officer would stop at Heck's Restaurant and Lounge located in the Beachcliff Mall at 19300 Detroit Road, Rocky River, Ohio. In late January or early February, 1984, while in the lounge at Heck's Restaurant, Judge James J. McGettrick approached this federal agent and engaged him in casual conversation. The judge obviously did not know that this man was a federal law enforcement officer at this time. In the course of the conversation with Judge McGettrick, the agent facetiously stated to the judge 'we really appreciate what you did for us in the Amato-Chakeralis murder case.' (In conjunction with the Hell's Angels Task Force investigation, Richard Amato and Harry Chakeralis, both prominent members of the Cleveland Chapter of the Hell's Angels Motorcycle Club, were indicted in case No. 174474 on charges of aggravated murder. This indictment concerned a previously unsolved bombing that occurred at 6101 Lansing Avenue, Cleveland, Ohio, on January 7, 1975, wherein three people were killed, including a two year old boy, and three other people were injured. Amato and Chakeralis were to be tried separately in this case with Amato going to be tried first. The case was assigned to Judge James J. McGettrick and on

November 8, 1983, Judge McGettrick directed a verdict of acquittal in favor of Amato after the state rested its case. Subsequently, the Cuyahoga County Prosecutor's Office determined that it would be useless to try Chakeralis on the same set of circumstances and his case was dismissed.)

"Judge McGettrick apparently interpreted the federal agent's statement about Amato's case to mean that he was supportive of or in some way associated with the Hell's Angels. The Judge began to talk about the Hell's Angels and told the federal agent that he had received partial payment for his ruling in the Amato case. He further stated that he had 'stuck his neck out to do this; that Jerry Milano had paid him to fix the case and that more money was still owed to him.' (Milano is an attorney in the Cleveland area specializing in the defense of organized crime figures.)

"On March 22, 1984, while in an off-duty capacity, the same federal agent saw Judge McGettrick at Heck's Restaurant. Judge McGettrick approached the agent and began to talk about the Frank Fencyl murder trial that is currently pending before him. (Fencyl, a member of the Cleveland Chapter of the Hell's Angels, is a defendant in case no. CR 174472, having been indicted in June of 1982 in the aggravated murder of organized crime figure, Joe Bonariggo.)

"Judge McGettrick indicated to the agent that the Fencyl case would be a 'tough one.' He then stated that neither Milano nor anyone else had yet approached him to set up a pay-off and asked the agent if he could 'find out what was happening.' The agent indicated to the Judge that he would try to check it out.

"On April 2, 1984 the same federal agent entered Heck's Restaurant and Lounge and was approached almost immediately by Judge McGettrick. The judge indicated to the agent at this time that he needed $5,000 within the next two weeks to 'fix the Fencyl case.' The Judge indicated that the agent should pay him in cash.

"Agents of the Federal Bureau of Investigation, Cleveland Police Department, Alcohol, Tobacco and Firearms, began surveillance of Judge McGettrick on April 9, 1984.

"On Monday, April 9, 1984, Judge McGettrick was observed by means of video-tape and other electronic surveillance meeting with the federal agent in Heck's Bar at 19300 Detroit AVenue [sic].

"On Thursday, April 12, 1984, the federal agent was approached by Judge McGettrick inside the lounge at Heck's Restaurant at approximately 5:05 p.m. This meeting was observed by means of electronic surveillance and during this meeting the judge asked the federal agent if he had the money. The agent indicated he would be able to obtain the money in fifteen minutes, whereby the judge said 'I'll wait here.' The judge also indicated 'now is when I need the money.'

"The agent left the bar and returned twenty minutes later with five thousand dollars in marked $100 bills wherein the Judge requested that they 'go to the men's room.' In the men's room of Heck's Restaurant and Lounge, the federal agent gave the $5,000 to Judge James J. McGettrick and the judge agreed to take the Fencyl case away from the jury.

"After a short period of further conversation in the bar, the federal agent left the premises at approximately 6:00 p.m. At approximately 6:30 p.m. agents observed Judge McGettrick leave Heck's Restaurant and Lounge in his 1984 Cadillac four door sedan, Ohio license number J M 23. The judge was followed to his residence located at 20525 Stratford Avenue, Rocky River, Ohio.

"Affiant avers that it is urgently necessary that the above mentioned

residence, chambers and automobile of Judge James J. McGettrick be searched in the day season forthwith to prevent the above named property from being concealed or removed so as not to be found.

"/s/ Robert J. Cermak, Sgt.

"SWORN to before me and subscribed in my presence this 13 day of April, 1984.

"/s/ Robert E. Feighan
JUDGE, COURT OF
COMMON PLEAS
CUYAHOGA
COUNTY, OHIO"