DECISION AND JOURNAL ENTRY
{¶ 1} Defendant, Jon Overholt, appeals from the judgment of the Medina County Court of Common Pleas which convicted him of receiving stolen property. We affirm.
 {¶ 2} In July of 2001, the Medina County Grand Jury indicted Defendant on one count of unlawfully receiving stolen property, in violation of R.C. 2913.51(A) and one count of tampering with identifying numbers, in violation of R.C. 4549.62(D)(1). Defendant pled not guilty to both counts. Thereafter, Defendant filed a motion to suppress the evidence obtained upon the execution of a search warrant. Defendant's motion was denied.
 {¶ 3} A jury trial was held on March 13, 2002. Defendant moved for acquittal pursuant to Crim.R. 29 and the trial court entered a judgment of acquittal with regards to count two. Defendant was found guilty of receiving stolen property and sentenced to six months incarceration. Defendant timely appealed raising eight assignments of error, which have been rearranged for purposes of review.
 ASSIGNMENT OF ERROR I
"Defendant was denied due process of law when the court overruled [D]efendant's motion to suppress."
 {¶ 4} In his first assignment of error, Defendant maintains that the trial court erred in denying his motion to suppress evidence. Specifically, Defendant asserts that the items seized from his business should have been excluded from evidence, as the officers did not have a valid search warrant due to lack of probable cause and failure to limit the scope of the search. Defendant's assignment of error lacks merit.
 {¶ 5} A trial court makes both factual and legal findings when ruling on a motion to suppress. State v. Jones, 9th Dist. No. 20810,2002-Ohio-1109, at ¶ 9. Accordingly, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." State v. Hopfer
(1996), 112 Ohio App.3d 521, 548, quoting State v. Venham (1994),96 Ohio App.3d 649, 653. An appellate court, therefore, is bound to accept a trial court's factual findings that are supported by competent, credible evidence. State v. Searls (1997), 118 Ohio App.3d 739, 741;State v. Guysinger (1993), 86 Ohio App.3d 592, 594. However, the trial court's application of law to the factual findings is reviewed de novo on appeal. State v. Russell (1998), 127 Ohio App.3d 414, 416. See, also,Ornelas v. United States (1996), 517 U.S. 690, 699, 134 L.Ed.2d 911.
 {¶ 6} Crim.R. 41(C) sets forth the standard for issuing search warrants. It reads, in pertinent part:
"A warrant shall issue under this rule only on an affidavit or affidavits sworn to before a judge of a court of record and establishing the grounds for issuing the warrant. The affidavit shall * * * particularly describe the place to be searched, name or describe the property to be searched for and seized, state substantially the offense in relation thereto, and state the factual basis for the affiant's belief that such property is there located. If the judge is satisfied that probable cause for the search exists, he shall issue a warrant identifying the property and * * * describing the * * * place to be searched. The finding of probable cause may be based upon hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing there is a factual basis for the information furnished."
 Probable Cause {¶ 7} When assessing whether an affidavit is supported by probable cause, the issuing magistrate or judge is to make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." State v. George (1989), 45 Ohio St.3d 325, paragraph one of the syllabus, quoting Illinois v. Gates (1983), 462 U.S. 213,238, 76 L.Ed.2d 527. See, also, State v. Cash (Mar. 14, 2001), 9th Dist. No. 20259, at 3. Probable cause does not require a prima facie showing of criminal activity. State v. Young, 146 Ohio App.3d 245,2001-Ohio-4284, at ¶ 23. One must only show that a probability of criminal activity exists. Id.
 {¶ 8} A court reviewing the sufficiency of probable cause in a submitted affidavit should not substitute its judgment for that of the issuing judge. State v. Tejada, 9th Dist. No. 20947, 2002-Ohio-5777, at ¶ 7, quoting George, 45 Ohio St.3d 325 at paragraph two of the syllabus. Rather, the duty of a reviewing court is to determine whether the magistrate or judge had a substantial basis for concluding that probable cause existed. George, 45 Ohio St.3d 325 at paragraph two of the syllabus; State v. Sheppard (1998), 84 Ohio St.3d 230, 236. Great deference is to be given to the issuing judge's determination and doubtful or marginal cases are to be resolved in favor of upholding the validity of the warrant. Cash, supra, at 3, citing George,45 Ohio St.3d 325 at paragraph two of the syllabus.
 {¶ 9} In the present case, Officer Richard Percy's affidavit for the search warrant states, in relevant part:
"[A]ffiant states his belief that certain items to wit: All-Terrain vehicles, any parts thereof, contraband, any and all all-terrain vehicle parts identified as stolen, any and all vehicle parts identified as stolen * * * in violation of [R.C. 2913.51] [are] located (on) premises known as: Tiger General and Cycles-R-Us at 6867 Wooster Pike, Montville Township, Medina Ohio 44256.
"The said property described as: Items stolen from 3808 Paradise Road, Montville Township, Medina Ohio 44256[.]"
 {¶ 10} Officer Percy indicated that Carl Bias ("Carl") informed him that on May 26, 2001, he observed the front fenders and the back rack of his all-terrain vehicle located at 6867 Cycles-R-Us. Carl and his son Ryan Bias ("Ryan") identified the parts due to the color, and distinctive "cracks," scratches, and rust patterns. Thereafter, on May 29, 2001, the judge issued a search warrant for the 6867 Wooster Pike property. Law enforcement officers were given authority to enter the premises and search for "[a]ll-[t]errain vehicles, any parts thereof, contraband, any and all all-terrain vehicle parts identified as stolen, [and] any and all vehicle parts identified as stolen[.]"
 {¶ 11} After reviewing the record, we find that the judge had a sufficient basis for concluding that probable cause existed. The informants are ordinary citizens and their identities are known to the police. Furthermore, the affidavit provides a statement concerning the informants' basis of their knowledge. The informants, who are the owners of the stolen parts, personally viewed the items on Defendant's property. Unlike information from a confidential or anonymous informant repeating hearsay information to police in the form of a tip, information from a citizen witness is presumed credible and reliable and supplies a basis for a finding of probable cause. State v. Garner (1995),74 Ohio St.3d 49, 63. Accordingly, Defendant's first assignment of error, as it pertains to probable cause to issue a search warrant, is overruled.
 Scope {¶ 12} Additionally, Defendant maintains that the warrant was invalid because it did not limit the scope of the search. We disagree.
 {¶ 13} General, exploratory searches are prohibited as evidence gathering tools and items seized pursuant to such a warrant violate the Fourth Amendment and are to be suppressed. State v. Halczyszak (1986),25 Ohio St.3d 301, 302. It is the court's function to make probable cause determinations regarding objects of a search and the scope of the search is not to be left to the discretion of the executing officers. WhiteFabricating Co. v. United States (C.A. 6, 1990), 903 F.2d 404, 410. See, also, State v. Scott, 7th Dist. No. 99 CA 324, 2001-Ohio-3417, citingAndresen v. Maryland (1976), 427 U.S. 463, 480, 49 L.Ed.2d 627. The items to be located and seized must be identified with sufficient particularity. See State v. McGettrick (1988), 40 Ohio App.3d 25, 29. The specificity required varies with the nature of the items to be seized. See id.
 {¶ 14} In determining whether a warrant is specific enough, the key inquiry is whether the warrant could reasonably have described the items more precisely. State v. Benner (1988), 40 Ohio St.3d 301, 307. It is important to note that the prohibition against general warrants will not prevent the issuance of a broad or generic listing of items to be seized if the circumstances do not allow for greater specificity and detail. State v. Dalpiaz, 151 Ohio App.3d 257, 2002-Ohio-7346, ¶ 27, citing United States v. Wicks (C.A. 10, 1993), 995 F.2d 964, 973.
 {¶ 15} In the present case, the warrant authorized the seizure of "All-Terrain vehicles, any parts thereof, contraband, any and all all-terrain vehicle parts identified as stolen, [and] any and all vehicle parts identified as stolen." Thus, the warrant limited the search relative to the particular circumstances of the case and the nature of the alleged stolen items. All the items identified were connected to the investigation of the receipt of the stolen all-terrain vehicle ("ATV") and various parts associated with the vehicle. Therefore, the evidence was sufficiently identified. The remainder of Defendant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR V
"Defendant was denied due process of law when he was allowed to be convicted of a criminal offense on a culpable mental state which was the equivalent of civil negligence."
 {¶ 16} In his fifth assignment of error, Defendant asserts that the trial court improperly instructed the jury regarding the relevant culpable mental state. Specifically, Defendant argues that the trial court erred in using a "reasonable cause to believe" standard. We disagree.
 {¶ 17} Defendant alleges that the court's definition of "reasonable cause" essentially imposed criminal culpability for civil negligence. In its instruction to the jury, the court stated:
"In determining whether [Defendant] had reasonable cause to believe that the property was obtained through a theft offense, you must put yourself in the position of this defendant with his knowledge, or lack of knowledge, and under the circumstances and conditions that surrounded him at that time. You must consider the conduct of the persons involved and determine if their acts and words and all the surrounding circumstances would have caused a person of ordinary prudence and care to believe that the property had been obtained through the commission of a theft offense."
 {¶ 18} This instruction was taken directly from the Ohio Judicial Conference's Ohio Jury Instructions, Sec. 513.51. Additionally, Ohio courts have held that this definition of "reasonable cause" properly explains the term for purposes of R.C. 2913.51. See State v. Hicks (Aug. 18, 1988), 8th Dist. No. 54219; In re Windle (Dec. 2, 1993), 10th Dist. No. 93AP-746. As "[t]he statute establishing this offense and the explanatory language in the court's charge satisfy constitutional requirements for due process, specificity, and clarity[,]" Defendant's argument must fail. Hicks, supra, citing State v. Bentz (1981),2 Ohio App.3d 352, 353. See State v. Emmons (1978), 57 Ohio App.2d 173,174-75. Thus, Defendant's fifth assignment of error is overruled.
 ASSIGNMENT OF ERROR II
"Defendant was denied due process of law when he was convicted of receiving stolen property."
 {¶ 19} In his second assignment of error, Defendant maintains that there was insufficient evidence to convict him of receiving stolen property and therefore his conviction was against the manifest weight of the evidence. We disagree.
 {¶ 20} As a preliminary matter, we note that sufficiency of the evidence produced by the State and weight of the evidence adduced at trial are legally distinct issues. State v. Thompkins (1997),78 Ohio St.3d 380, 386. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000) 9th Dist. No. 19600, at 3, citing Thompkins, 78 Ohio St.3d at 390 (Cook, J., concurring).
 {¶ 21} When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 22} Defendant was found guilty of receiving stolen property, in violation of R.C. 2913.51(A) which provides "[n]o person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." One "acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). Reasonable cause entails determining whether a person of ordinary prudence and care would believe that the property had been obtained through the commission of a theft offense. State v. Petty (May 21, 1987), 8th Dist. No. 52069; Bentz, 2 Ohio App.3d at 353.
 {¶ 23} At trial, Carl testified that he purchased a Kawasaki 220 ATV four-wheeler, for $3,200, from Jerry Farrell ("Farrell") in December of 1999. Although Carl is the title holder, he stated that the ATV was given to his son Ryan as a Christmas gift that same year. In early February, 2001, as Ryan was riding the ATV through the woods, he hit a rock and put a hole in the "crankcase." Carl asserted that he then took the ATV to Defendant's place of business, Cycles-R-Us, to have it repaired. Carl first spoke with David Mahone ("Mahone") and was informed that a man from the adjoining business, Tiger General, would weld the "crankcase." Carl testified that he paid $65 to $75 for the repair and received the ATV the following day.
 {¶ 24} Carl recalled that the following May, the ATV was stolen. Carl explained that Ryan last rode the ATV, and then locked it away in their pole barn, on a Sunday. That Thursday, when Carl went to ride the ATV, he discovered that it had been stolen. Carl stated that he saw "pry marks on the door" to the barn. He asserted that the ATV was the only item stolen; his tools, tractor and vehicle were not taken. Carl further asserted that earlier in the week he observed tire tracks down the side of the hill in the grass but dismissed them as tracks from the lawn mower.
 {¶ 25} Upon discovering that the ATV was missing, Carl went to the Montville Police Department and filed a report. He then went to Farrell's, on Saturday, to see if anyone inquired into the purchase of an ignition. A new ignition would most likely be needed in order to operate the vehicle as Carl still had possession of the keys. Carl informed the employees that his ATV was stolen and they recorded his information and indicated that they would contact him if they learned anyone was searching for an ignition switch. Carl then went to inquire at Defendant's place of business, which was roughly six miles from Carl's residence. He thought the offender may have visited Cycles-R-Us to purchase an ignition switch. Carl recalled that he and his son walked through the "junkyard" behind the business which is where Defendant kept numerous parts and pieces to motorcycles and ATVs. He then noticed some pieces which were the same green color as their Kawasaki ATV. Ryan then looked at the pieces and identified them as front fenders to their ATV. Carl also examined the pieces and was able to identify the fenders as being from their ATV, due to a crack that they had covered with duct tape. At trial, Carl again identified the fenders and indicated that they were in the same condition that he had found them in on Defendant's lot.
 {¶ 26} Carl stated that they also found the front and back "racks" on the opposite end of the property. He noticed identifying marks such as a dent and rust spots. The back fender was also discovered. Carl was able to identify this part due to the color and his tools and spark plug that were housed inside it. Carl and his son finished browsing the area and then left. Upon returning home, Carl contacted the police and informed them that he had located some of the parts to his missing ATV. Carl stated that the remainder of the vehicle was never recovered.
 {¶ 27} Ryan offered a similar version of events. He testified that the ATV was stolen from the barn in May of 2001. Ryan road the ATV on a Sunday and the theft was not discovered until four days later. Looking back, Ryan recalled seeing "trails" through the yard the day before. He explained that he went with his father, Carl, to Farrell's and to Cycles-R-Us to ask about ignition switches. While at Cycles-R-Us, Ryan observed his front and rear fenders and front and back "racks" lying amongst various other ATV parts and pieces. Ryan was able to identify the parts as belonging to their ATV due to their green color, "dents," rust spots, duct tape, and the new tail light on the back fender.
 {¶ 28} Officer Richard Percy of the Montville Police Department participated in the search of Defendant's business. He explained that the lot, which was roughly one acre in size, contained an estimated 1,000 motorcycles, and "[a] couple dozen" racks and fenders. He testified that the front and back racks along with the front and back fenders were recovered. Officer Percy asserted that he knew which items to recover due to the description given by Carl. He stated that Carl and Ryan were brought into the police station to identify the recovered pieces.
 {¶ 29} Officer Christopher Ryba also participated in the search. Officer Ryba recalled seeing the green parts lying in some tall grass and weeds beside a trailer behind Cycles-R-Us. He explained that they were found in a different area than the organized area that had separated, cleaned parts for resale. Officer Ryba testified that after the parts were recovered, he presented Defendant with a written statement form that he watched Defendant complete and sign.
 {¶ 30} In his written statement Defendant indicated that "[a]fter seeing what [the police] found and what was on the warrant, [he] knew what they specifically were looking for." He explained that "[o]n a day or so prior, [he] had a nosey customer looking for a part for this certain ATV. [He] showed [the customer] right to all the certain parts of that make that [he] had, and let [the customer] point out what he wanted." Defendant stated that he "just recently acquired some of these parts" from a fellow customer who "buys lots of stuff here * * * as he is a sponsored racer." Defendant further indicated that he inquired as to where the parts were from and was advised that they "came from an insurance job, and that the Kawasaki dealer had replaced all the damaged parts with brand new parts." Defendant stated that he was not present when the parts were brought in.
 {¶ 31} Mahone, Defendant's former employee, explained how Cycles-R-Us acquired the subject ATV parts. Mahone stated that two days before the search was performed, a customer by the name of Ryan, brought the parts in and set them alongside the trailer and then left after asserting that he would return. Mahone alleged that he did not inquire as to what Ryan's intentions were because he was a familiar customer. Mahone testified that he then told a fellow employee that Ryan had dropped off some parts. He was advised to wait for his return. Mahone indicated that the business would keep the items and then eventually sell them if the customer did not come back to complete the trade or sale after thirty days. He recalled previously observing Ryan trade items in this manner and assumed he was compensated because he never received any complaints. Mahone stated that he did not think Ryan ever returned in this particular instance.
 {¶ 32} Lastly, Ryan Keldsen ("Keldsen"), a salesman at State Road Motorcycle, testified as to the valuation of the various replacement parts. He estimated that a replacement fender would cost between $50 to $75 and a rack was roughly $30 to $50. Additionally, he indicated that a tank cover and battery cover would cost no more that $30. He stated that all the recovered items, if newly purchased, would cost in the "area" of $500.
 {¶ 33} Although much of the evidence supporting Defendant's conviction is circumstantial, it is permissible for the elements of an offense to be established by direct evidence, circumstantial evidence, or both as circumstantial and direct evidence possess equal evidentiary value. State v. Jenks (1991), 61 Ohio St.3d 259, 272. The circumstantial evidence adduced at trial, if believed, reasonably supports a finding that Defendant was in receipt of stolen property. It is undisputed that the items were recovered from Defendant's property. Moreover, Defendant acknowledged, in his written statement, receiving the items from a customer. Clearly, the jury, in weighing the evidence, the credibility of the witnesses and testimony elicited at trial, could have concluded that Defendant was guilty of receiving stolen property beyond a reasonable doubt. Moreover, a determination as to what occurred is a question for the trier of fact, and it is not the function of the appellate court to substitute its judgment for that of the factfinder. See id.
 {¶ 34} After careful review of the record, we are unable to conclude that the trier of fact lost its way and created a manifest miscarriage of justice when convicting Defendant of receiving stolen property. Although conflicting testimony was presented, we refrain from overturning the verdict because the jury chose to believe other testimony. "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the [trier of fact] believed the prosecution testimony." Statev. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at 4. Consequently, Defendant's conviction was not against the manifest weight of the evidence.
 {¶ 35} This Court has previously observed that "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." (Emphasis omitted.) State v. Roberts
(Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4. As we have already determined that Defendant's conviction was not against the manifest weight of the evidence, we necessarily conclude that there was sufficient evidence to support the verdict in this case. Accordingly, Defendant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III
"Defendant was denied due process of law when the court did not define what was meant by receipt of property."
 {¶ 36} In his third assignment of error Defendant asserts that the court erred when it failed to grant his request for a jury instruction on the meaning of receipt. Defendant's assignment of error is not well taken.
 {¶ 37} Although special instructions which correctly state the law are to be included, in substance, in the general charge to the jury, "amplification of statutory definitions is inadvisable [and is] likely to introduce error[.]" State v. Mahoney (1986), 34 Ohio App.3d 114, 119. Furthermore, courts are not required to define terms of common usage in their jury instructions. State v. Riggins (1986), 35 Ohio App.3d 1, 8. An instruction to the jury is not to be reviewed in isolation; rather it is to be viewed in the context of the complete charge. State v. Price
(1979), 60 Ohio St.2d 136, paragraph four of the syllabus.
 {¶ 38} In the present case, the instructions, taken as a whole, made it clear to the jury that the State had to prove more than mere physical possession by Defendant of the ATV parts in order to find him guilty of receiving stolen property. The trial court specifically instructed the jury that in order to find Defendant guilty, they had to find beyond a reasonable doubt that Defendant knew or had reasonable cause to believe that the parts were obtained through the commission of a theft offense. Consequently, we are unable to conclude that trial court erred by failing to honor Defendant's request. See State v. Jacobs
(1995), 108 Ohio App.3d 328, 334 (finding that the trial court did not err by failing to give a jury instruction on the definition of "receipt"). Accordingly, Defendant's third assignment of error is overruled.
 ASSIGNMENT OF ERROR IV
"Defendant was denied due process of law when the court instructed the jury concerning the valuation of ATV parts."
 {¶ 39} In his fourth assignment of error, Defendant maintains that the court improperly instructed the jury with regards to the valuation of the stolen property. We disagree with Defendant's allegation.
 {¶ 40} There are three methods for valuing property under R.C.2913.61(D) which correspond to three different classifications of property. Only one division applies to any particular item. Accordingly, it must first be ascertained which category the stolen items are to be valued under. R.C. 2913.61(D)(2) covers "personal effects and household goods, and * * * materials, supplies, equipment, and fixtures used in the profession, business, trade, occupation or avocation, of its owner[.]" The corresponding method of valuation is the cost of replacing the items with new ones of like kind and quality. R.C. 2913.61(D)(2). This was the method applied by the trial court.
 {¶ 41} Defendant maintains that the valuation was improper as ATV parts are not personal effects or household goods pursuant to the Ohio Supreme Court's decision in State v. Chaney (1984), 11 Ohio St.3d 208. InChaney, the court held that the phrase "personal effects" was not intended to include all items of tangible property having some personal use but limited to articles having an intimate association with the owner. Id. at syllabus. However, "personal effects" are just one type of property covered by R.C. 2913.61(D)(2); "materials, supplies, equipment, and fixtures used in the * * * avocation of its owner" are also included. An avocation is "[a] calling away * * * or subordinate or occasional employment, or hobb[y][.]" Black's Law Dictionary (6 Ed. 1990) 136. Thus, the trial court could have reasonably concluded that the all-terrain vehicle and its parts constituted materials, supplies, and equipment used in the avocation of its owner and therefore employed the cost of replacement as the valuation method. See State v. Golden (June 12, 1991), 9th Dist. No. 90CA004877, at 5 (classifying tires, rims, and hubcaps as R.C. 2913.61(D)(2) property). Accordingly, Defendant's fourth assignment of error is overruled.
 ASSIGNMENT OF ERROR VI
"Defendant was denied due process of law when the court admitted [D]efendant's written statement after the entirety of that statement had been read to the jury."
 {¶ 42} In his sixth assignment of error, Defendant essentially argues that the trial court abused its discretion by admitting cumulative evidence in violation of Evid.R. 403(B). We disagree.
 {¶ 43} A trial court enjoys broad discretion in admitting evidence. State v. Long (1978), 53 Ohio St.2d 91, 98. Thus, reviewing courts are not to reject an exercise of this discretion unless it has clearly been abused and the criminal defendant thereby has suffered material prejudice. Id. An abuse of discretion is more than an error of law or judgment and implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. Furthermore, when applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621.
 {¶ 44} Although relevant evidence is generally admissible, Evid.R. 403(B) provides for the discretionary exclusion of relevant evidence if "its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence." In the present case, a police officer read into evidence the written statement of Defendant pursuant to See Evid.R. 801(D)(2)(a). Thereafter, the written statement itself was admitted as an exhibit over defense counsel's objection. The court indicated that the court "[did] not find the evidence that cumulative [and] let the exhibit in." Upon review, we cannot say that this is an instance where the trial court abused its discretion and acted unreasonably or arbitrarily by admitting Defendant's written statement into evidence thus causing the needless presentation of cumulative evidence. Accordingly, Defendant's sixth assignment of error is overruled.
 ASSIGNMENT OF ERROR VII
"Defendant was denied a fair trial and due process of law by reason of improper prosecutorial argument."
 {¶ 45} In his seventh assignment of error, Defendant argues that he was denied a fair trial due to alleged prosecutorial misconduct. More specifically, Defendant alleges that the prosecutor's references to testimony adduced at trial concerning the dismissed charge of altering a vehicle identification number and his comment that the State had proven the elements of the offense beyond a reasonable doubt were sufficient to award him a new trial. We disagree with Defendant's assertions.
 {¶ 46} The Ohio Supreme Court has limited the instances when a judgment may be reversed on grounds of prosecutorial misconduct. SeeState v. Lott (1990), 51 Ohio St.3d 160, 166. The analysis of cases alleging prosecutorial misconduct focuses on the fairness of the trial and not the culpability of the prosecutor. Id. A reviewing court is to consider the trial record as a whole, and is to ignore harmless errors "including most constitutional violations." Id. Accordingly, a judgment may only be reversed for prosecutorial misconduct when the improper conduct deprives the defendant of a fair trial. State v. Carter (1995),72 Ohio St.3d 545, 557.
 {¶ 47} In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, a reviewing court must determine if the remarks were improper, and, if so, whether they actually prejudiced the substantial rights of the defendant. See State v. Smith (1984),14 Ohio St.3d 13, 14. "Isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." State v.Hill (1996), 75 Ohio St.3d 195, 204. Moreover, the defendant must show that there is a reasonable probability that but for the prosecutor's misconduct, the result of the proceeding would have been different. SeeState v. Loza (1994), 71 Ohio St.3d 61, 78.
 {¶ 48} In this case, Defendant alleges that the prosecutor inappropriately referenced testimony concerning an altered vehicle identification number after the related charge was dismissed.
 {¶ 49} "Relevant evidence" encompasses "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. As a trial court enjoys broad discretion in admitting evidence, reviewing courts are not to reject an exercise of this discretion unless it clearly has been abused and the criminal defendant thereby has suffered material prejudice. Long,53 Ohio St.2d at 98.
 {¶ 50} Although the challenged evidence supports the charge of tampering with vehicle identifying numbers which was dismissed, the trial court could have reasonably concluded that the evidence was also relevant to the charge of receiving stolen property. The prosecutor was merely restating the circumstantial evidence established at trial. Consequently, we do not find that the trial court abused its discretion when it permitted the prosecutor to comment on these alterations in the identifying numbers after the tampering charge had been dismissed.
 {¶ 51} Additionally, Defendant asserts that he is entitled to a new trial because the prosecutor improperly expressed his opinion as to Defendant's guilt through his comment, during closing arguments, that the State "ha[s] shown, beyond a reasonable doubt, each and every element of this offense[.]"
 {¶ 52} While Ohio courts have found that a prosecutor may not express his personal opinion as to the guilt of the accused, he may argue his conclusion of guilt based on the evidence admitted at trial. Statev. Wells (Sept. 8, 1994), 4th Dist. No. 93 CA 9. See, also, State v.Thayer (1931), 124 Ohio St. 1, 6. In the present case, the alleged improper remarks appear to have been based on the evidence presented in the case. The statement is limited by the phrase the State "has[s] shown[.]" Thus, the statement does not reflect the prosecutor's personal opinion as to the guilt of the accused based on something outside the admitted evidence. Rather, as the statement is based on the evidence presented at trial, Defendant's substantial rights were not prejudicially affected. See Wells, supra, citing State v. Ullum (May 2, 1985), 4th Dist. No. 83 X 23.
 {¶ 53} Furthermore, even if the prosecutor's actions were improper, Defendant has failed to show, much less allege, that there is a reasonable probability that the result of the proceedings would have been different absent the alleged errors. See State v. Kobelka, 9th Dist. No. 01CA007808, 2001-Ohio-1723, at 3-4. Defendant has not established that the prosecutor's conduct prejudicially affected him. Accordingly, Defendant's seventh assignment of error is overruled.
 ASSIGNMENT OF ERROR VIII
"Defendant was denied due process of law when the indictment was not dismissed as there was a material variance."
 {¶ 54} In his final assignment of error, Defendant maintains that there was a material variance in his indictment and therefore the indictment should have been dismissed. We disagree.
 {¶ 55} A defendant has the right to be informed as to the nature of the charges against him so that he may adequately prepare a defense.State v. Fowler (1963), 174 Ohio St. 362, 364. An indictment is sufficient if the essential elements of the crime are contained in language substantially similar to that in the statute. State v. Oliver
(1972), 32 Ohio St.2d 109, 110; State v. Joseph (1926), 115 Ohio St. 127,131. If there is a material variance between the allegations in the indictment and the proof at trial, the case should be dismissed. SeeState v. Pittman (1967), 9 Ohio St.2d 186, 186. We note however, that Crim.R. 33(E)(1) limits instances when a conviction will be reversed based on imperfections in an indictment: A conviction will not be reversed because of "[a]n inaccuracy or imperfection in the indictment * * * provided that the charge is sufficient to fairly and reasonably inform the defendant of all the essential elements of the charge against him." Additionally, a variance between the allegations and the proof at trial is an insufficient ground to reverse a conviction, unless the defendant is misled or prejudiced. Crim.R. 33(E)(2).
 {¶ 56} The indictment in question alleged that "on or about the 26th day of May, in the year [2001], within the County of Medina, [Defendant] unlawfully did, receive, retain or dispose of certain property, being ATV parts, the property of another, one Ryan R. Bias, the said [Defendant] knowing or having reasonable cause to believe said property had been obtained through the commission of a theft offense, in violation of [R.C.] 2913.51(A), * * * a felony of the fifth degree[.]" Defendant argues that the evidence produced at trial indicated that Ryan's father, Carl, and not Ryan, was the titled-owner of the subject property. Defendant maintains that this alleged variance is material in nature and therefore the indictment should have been dismissed.
 {¶ 57} However, this minor variation, if a variation at all, made no difference to the nature of the charge. The identity of the owner of the stolen property is not an element of the offense and an addition or change thereof does not generally change the name or identity of the crime charged. Furthermore, Defendant failed to show that the change affected his ability to prepare an adequate defense. As there is no concrete basis to find that the revelation of an additional owner of the property, namely Carl who is the titled-owner of the vehicle, caused him prejudice, Defendant's argument cannot succeed. In the instant case, we find that Defendant was adequately apprised of the charges against him. Accordingly, Defendant's eighth assignment of error is overruled.
 {¶ 58} Defendant's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
REECE, J. CONCUR