DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-appellant, Michael A. Lather, Jr., appeals the February 5, 2003 judgment of the Sandusky County Court of Common Pleas which, following a jury trial, found appellant guilty of trafficking in crack cocaine, in violation of R.C. 2925.03(A)(1), (C)(4)(f), and sentenced him to seven years of imprisonment and a $7,500 mandatory fine. From that judgment and the court's prior judgment denying his motion to suppress, appellant raises the following six assignments of error:
 {¶ 2} "1) The trial court erred to the prejudice of the defendant in denying defendant's motion to suppress.
 {¶ 3} "2) The trial court erred to the prejudice of the defendant in calling as the court's witness, Jeffrey Moore, at the request of the prosecuting attorney.
 {¶ 4} "3) The ruling of the trial court denying the defendant's motion for acquittal was erroneous and the verdict of the jury was against the manifest weight of the evidence.
 {¶ 5} "4) The trial court erred to the prejudice of the defendant in admitting evidence regarding other unrelated acts regarding the alleged conduct of the defendant that allegedly occurred subsequent in time to the arrest of the defendant herein, which denied the defendant a fair trial.
 {¶ 6} "5) The conduct and demeanor of the trial judge during the defendant's trial in the presence of the jury was prejudicial to the defendant and denied the defendant a fair trial.
 {¶ 7} "6) The trial court erred to the prejudice of the defendant in failing to hold a hearing to determine his ability to pay the mandatory drug fine when the trial court previously found the defendant to be indigent for purposes of court appointed counsel."
 {¶ 8} On August 17, 2001, appellant was arrested in Fremont, Sandusky County, Ohio, following a traffic stop, for allegedly trafficking in crack cocaine earlier in the day in Huron County, Ohio. Thereafter, on August 31, 2001, the Ottawa County Sheriff's Department, concerning an unrelated drug investigation involving appellant, obtained a search warrant through Sandusky County to execute on appellant's alleged residence. Three digital scales were recovered.
 {¶ 9} On September 6, 2001, appellant was indicted on one count of trafficking in crack cocaine for the August 17, 2001 incident; appellant entered a not guilty plea. Subsequently, appellant filed a motion to suppress all evidence seized during the search of appellant's apartment and vehicle and any statements made by appellant following his arrest after each incident. On October 24, 2002, following a hearing, the trial court denied appellant's motion.
 {¶ 10} The November 21, 2002 trial on the matter resulted in a hung jury. Thereafter, appellant filed a motion in limine to prevent the state from offering any evidence regarding any charged or non-charged alleged drug dealings involving appellant, for which he had not been convicted. Following a hearing on the matter, the motion was denied.
 {¶ 11} The second trial commenced on January 29, 2003, and appellant was found guilty. On February 5, 2003, appellant was sentenced to seven years of imprisonment, a $7,500 mandatory fine, and forfeiture of his 1988 BMW and the $3,143 found on appellant's person at the time of his arrest. This appeal followed.
 {¶ 12} In appellant's first assignment of error he argues that the court erroneously denied his motion to suppress because the August 31, 2001 search warrant was not based on probable cause and, even assuming the warrant's validity, it did not give the officers authority to search for the scales. Appellant further contends that during the August 17 and August 31, 2001 incidents he was not properly advised of his Miranda
rights.
 {¶ 13} We first note that when considering a motion to suppress, a trial court is in the best position to resolve factual questions and evaluate the credibility of witnesses. State v. Mills (1992),62 Ohio St.3d 357, 366. When reviewing a trial court's ruling on a motion to suppress, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v.Guysinger (1993), 86 Ohio App.3d 592, 594. An appellate court must independently determine, without deferring to a trial court's conclusions, whether, as a matter of law, the facts meet the applicable standard. State v. Klein (1991), 73 Ohio App.3d 486, 488.
 {¶ 14} In reviewing whether the affidavit sufficiently supported the issuance of the search warrant, the role of the trial court and the appellate court is limited as follows:
 {¶ 15} "In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial judge nor an appellate court should substitute its judgment for that of the magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." State v.George (1989), 45 Ohio St.3d 325, paragraph two of the syllabus.
 {¶ 16} In determining whether and affidavit in support of a request for a search warrant provides sufficient information to satisfy the probable cause requirement, the issuing magistrate must determine whether, "* * * given all the circumstances set forth * * * including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability [that evidence will be found.]" Id. at paragraph one of the syllabus.
 {¶ 17} The affidavit in this case chronicled the events from appellant's arrest on August 17, 2001, through the following week. Included was information that the affiant/detective had been informed that appellant, prior to his arrest on August 17, 2001, had given a large amount of narcotics to his girlfriend living in Port Clinton, Ottawa County, Ohio. According to the named informant, on approximately August 21, 2001, the narcotics were located in her apartment, in a Black 
Decker box under her kitchen sink. The affiant stated that following a consent search of the informant's apartment, a detective recovered a Black Decker box which contained a "large plastic wrapped package." The package was tested and preliminary results indicated that the substance was crack cocaine in an amount greater than 500 grams.
 {¶ 18} The affiant further stated that he had been employed with the Ottawa County Drug Task Force for the past five and one-half years and, that based upon this experience, he knows that drug traffickers maintain certain records, secrete contraband, use certain electronic devices to store telephone numbers of customers, keep various drug paraphernalia for packaging, diluting, weighing and distributing drugs, and attempt to secret their profits. Based on the foregoing, the affiant stated that he had reason to believe that appellant, at his Sandusky County residence, had the above property which was used in drug trafficking.
 {¶ 19} After careful review of the affidavit, we find that the judge had a substantial basis for determining that there was sufficient probable cause to issue a search warrant. Appellant was recently arrested on a drug trafficking charge; and a large quantity of crack cocaine, allegedly his, was recovered in Ottawa County.
 {¶ 20} Also relating to the issuance of the search warrant, appellant claims that the search warrant did not give the officers the authority to search for and confiscate, inter alia, three electronic scales. Appellant contends that the officers were limited to the items listed on the face of the warrant. The search warrant authorized seizure of the following items:
 {¶ 21} "a) letters, correspondences, records, or any documentation of any transactions, including but not limited to checking and saving accounts, bank statements, income tax returns, safety deposit keys and/or records, or records of purchases of any and all items. Also, any record, correspondence or photographs that would connect the possessor with a criminal enterprise or to other members of a criminal enterprise. Instruments used to facilitate the criminal enterprise, including but not limited to cell phones and/or pagers and records indicating their purchase and or use in the enterprise. Fruits and/or evidence of the criminal enterprise, such as large sums of cash and other assets."
 {¶ 22} In State v. Kobi (1997), 122 Ohio App.3d 160, this court found that "[e]vidence not specifically described in a search warrant may be validly seized if, based on evidence known to the officers, the seized items were closely related to the crime being investigated or were instrumentalities of the crime." Id. at 171, citing State v. McGettrick
(1988), 40 Ohio App.3d 25, 29.
 {¶ 23} In this case, the criminal enterprise under investigation was drug trafficking. Digital scales are commonly used as instrumentalities of drug trafficking. Accordingly, we find that the officers did not seize items beyond the scope of the search warrant.
 {¶ 24} In his motion to suppress, appellant also argued that the police officers, following the August 17 and August 31, 2001 arrests, failed to advise him of his rights as required under Miranda v. Arizona
(1966), 384 U.S. 436. We will separately examine each arrest.
 {¶ 25} At the April 18, 2002 suppression hearing, Officer Woolf testified that following appellant's August 17, 2001 arrest, Woolf, at the Fremont Police station, read appellant the Miranda warnings and confirmed that he understood them. Appellant then signed a waiver of rights form which was admitted into evidence.
 {¶ 26} Appellant testified that Woolf never explained that he was signing a waiver of rights form; Woolf just requested that appellant sign a "group of papers." Appellant testified that he did not understand that anything he said could be used against him. During cross-examination, appellant admitted that he had been arrested on several prior occasions.
 {¶ 27} According to Miranda v. Arizona, before a suspect in police custody is questioned, the suspect:
 {¶ 28} "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." Id. at 479.
 {¶ 29} A suspect may waive his Miranda rights provided his waiver is knowing and voluntary. Edwards v. Arizona (1981), 451 U.S. 477, 483. InNorth Carolina v. Butler (1979), 441 U.S. 369, 373, the United States Supreme Court explained:
 {¶ 30} "An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the Miranda case. As was unequivocally said inMiranda, mere silence is not enough. That does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights. The court must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated."
 {¶ 31} The issue of waiver is determined by the totality of the circumstances in each case, including the defendant's background, experience and conduct. Id. The state is required to prove only that appellant waived his right to remain silent by a preponderance of the evidence. Colorado v. Connelly (1986), 479 U.S. 157.
 {¶ 32} Upon review of the evidence presented at the suppression hearing, we find that the court did not err by admitting appellant's statements following his August 17, 2001 arrest. Testimony was presented that appellant was read his rights and understood them; he also signed the written waiver form. Further, appellant had completed high school and some college, and had been arrested on prior occasions.
 {¶ 33} On August 31, 2001, pursuant to the Ottawa County arrest warrant, appellant was arrested and returned to his alleged apartment so he could be present during the execution of the search warrant. Officer Woolf testified that he "Mirandized" appellant by reading from an "Advice of Rights" form. Woolf testified that he did not ask appellant if he understood his rights and he did not asked appellant if he wished to waive his rights. Woolf also testified that he did not read the waiver of rights language on the back of the "Advice of Rights" form. Woolf stated that it was "standard protocol" for the arresting officer, in this case Sergeant Garza, to read the suspect his Miranda warnings. Woolf acknowledged that he never confirmed that Garza, in fact, read appellant his rights. Finally, Woolf stated that he did not interrogate appellant.
 {¶ 34} Ottawa County Detective Larry St. Clair testified that, during the search, after he found the first digital scale he asked appellant what he used it for. Appellant responded that the prior renter had left it. After St. Clair found two additional scales, he asked appellant if they were his. Appellant again responded that the prior renter left them and he stated that they were not working.
 {¶ 35} St. Clair stated that he did not read appellant his rights. St. Clair testified that he asked Officer Woolf is he had read appellant his rights, and relied on Woolf's representation that he had. St. Clair did nothing to independently verify that appellant understood his rights and waived them.
 {¶ 36} As set forth above, a Miranda waiver need not be expressly made in order to be valid. However, even if the waiver is implied, it must be shown that the suspect, in fact, knowingly and voluntarily waived his rights before making the statement. State v. Scott (1980),61 Ohio St.2d 155, paragraph one of the syllabus, following NorthCarolina v. Butler, 60 L.Ed. 2d 286, 292.
 {¶ 37} In Tague v. Louisiana (1980), 444 U.S. 469, the United States Supreme Court concluded that the petitioner's inculpatory statement was erroneously admitted into evidence where the arresting officer could not recall if he asked petitioner whether he understood the rights as read to him. In Tague, the Louisiana Supreme Court concluded that the arresting officer "is not `compelled to give an intelligence test to a person who has been advised of his rights to determine if he understands them * * *.'" Id. at 469-470, quoting 372 So.2d. 555, 557. Reversing the majority, the United States Supreme Court, concurred with the dissent's analysis, quoting:
 {¶ 38} "`* * * the majority today creates a presumption that the defendant understood his constitutional rights and places the burden of proof upon the defendant, instead of the state, to demonstrate whether the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel.'" Id. at 470, quoting 372 So.2d at 558.
 {¶ 39} In State v. Murphy (2001), 91 Ohio St.3d 516, the Ohio Supreme Court noted that "[w]here a suspect speaks freely to police after
acknowledging that he understands his rights, a court may infer that the suspect implicitly waived his rights." (Emphasis in original.) (Citations omitted.) Id. at 519. The court noted that "[a] suspect's acknowledgment that he understands his rights should not, perhaps, `inevitably carry the day,' but such an acknowledgment `is especially significant when defendant's incriminating statement follows immediately thereafter * * *.'" Id., quoting 2 LaFave, Israel King, Criminal Procedure (2 Ed. 1999), 592, Section 6.9(d). The court then examined the surrounding circumstances to confirm that the waiver was voluntary. Id.
 {¶ 40} In this case, Officer Woolf unequivocally testified that he neither asked appellant if he understood his rights nor asked appellant if he wished to waive his rights. Thereafter, Officer St. Clair, without apprising appellant of his rights, questioned him about the digital scales found in the apartment. We do acknowledge that appellant had prior contacts with the criminal justice system and had recently been arrested; appellant had also completed high school and some college. However, in order for appellant to, at minimum, impliedly waive hisMiranda rights, it must be shown that he understood those rights. Such an understanding may not be presumed. Accordingly, we find appellant's first assignment of error well-taken, in part, as it relates to the August 31, 2001 interrogation.
 {¶ 41} Accordingly, based on our disposition of appellant's first assignment of error, we find Assignments of Error Nos. II through VI are moot and not well-taken. Because appellant's August 31, 2001 statements were admitted at trial, and because, after review of the entire record we believe that the evidence of appellant's guilt was not overwhelming, we find that the matter must be remanded for a new trial.
 {¶ 42} On consideration whereof, we find that appellant was prejudiced and prevented from having a fair trial and the judgment of the Sandusky County Court of Common Pleas is reversed. The matter is remanded for a new trial. Pursuant to App.R. 24, court costs are assessed to appellee.
Judgment Reversed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Pietrykowski, J., Singer, P.J. Concur.